Garrett v. Wagner.

---

GARRETT, *Appellant*, v. WAGNER *et al.*

Division Two, December 18, 1894.

1. **Husband and Wife**: PERSONAL PROPERTY OF WIFE: STATUTE. Before the statute of 1875 (R. S. 1879, sec. 3296) went into operation, the personal property of the wife was presumed to belong to the husband.

2. ———: GIFT TO WIFE: FRAUD. The gift of shares of building and loan stock by a husband to his wife and the payment of dues thereon by him for several years can not stand against the claims of creditors of the husband, he being insolvent at the time of the gift and of the payment of the dues.

3. ———: ———: ———: MOTIVE. The motive which prompted the gift in such case is wholly immaterial.

4. ———: ———: ———: EVIDENCE. Evidence attempted to be elicited from an insolvent husband who made gifts to his wife, that he did not intend to defraud his creditors, is incompetent.

5. ———: ———: ———. The fact that an insolvent debtor pays for property bought in the name of his wife in small installments does not render such gift to the wife valid as against his creditors, notwithstanding he did not have at any one time during the period the payments were being made the amount of personal property exempt to him from execution.

6 **Execution, Exemption From**: WHO MAY CLAIM EXEMPTION. Exemption of property from execution is a personal privilege and can only be exercised when the officer calls with the writ or makes a levy, and then only for the benefit of the claimant and not for the benefit of another.

7. ———: ———. Such claim must be made to avert a threatened seizure or levy, or to defeat a levy already made, and the claimant must at the time be in the possession of the property.

8. ——: ——. A claim of exemption of property from execution where it has been paid for in installments can only be exercised on it as aggregated, and can not reach back and operate upon the payments before they reach the exemption limit.

9. ——: ——: HUSBAND AND WIFE: CLOUD ON TITLE. Where property bought by the husband, but held in the wife's name, is sold on execution against him, and the purchaser brings suit to remove the cloud on his title created by the wife's deed, the defense that the purchase money was exempt to the husband must be set up by the wife and not by him.

10. Husband and Wife: FRAUDULENT CONVEYANCE. An arrangement by which an insolvent debtor purchases land and conveys it to his wife and pays her for it a stipulated rental per month which is used to pay off a deed of trust on it, is fraudulent as to his creditors.

11. ——: ——: EXECUTION AGAINST HUSBAND: RIGHTS OF PURCHASER: CLOUD ON TITLE. Where land belonging to the husband, but held in the name of the wife, is sold on execution against the husband and bought by the execution creditor, the latter acquires all the title and interest of the husband, burdened with the cloud cast upon that title by the fraudulent conveyance to the wife, and not merely the right to have his debt, interest, costs and attorney's fees satisfied out of the land. (Overruling *Woodard v. Mastin*, 106 Mo. 364.)

12. ——: ——: ——: ——: ——: INNOCENT PURCHASER: SUBROGATION. Where, in such case, the land has been conveyed by the wife to an innocent purchaser, the execution creditor purchasing at the sale is entitled to be subrogated to the rights of the husband and wife.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

In 1877, one of the defendants herein, Joseph P. Wagner, executed his promissory note to George W. Garrett for $472.71, with ten per cent. interest from date, compounded annually. This note Garrett afterwards transferred to the plaintiff, who sued Wagner thereon and recovered judgment in February, 1889, in the Saline circuit court for $1,269.28, etc.

In May, 1883, Wagner, who was then insolvent, and, according to his story, "has been insolvent ever since he has been in this county," subscribed for five shares of the stock of the Saline county Building & Loan Association. The face value of these shares was $200 each. He paid five installments of $5 per month on these shares which made them worth $25.50 and then on September 7 of that year gave them to his wife, Sarah T. Wagner, his codefendant, and had them transferred to her on the books. At that time she had no property of any kind or description whatsoever. From the time of the transfer of this stock up to February, 1886, Wagner, notwithstanding such transfer, continued to pay $5 per month installments on this stock, which payments were maintained until February, 1886, up to which time Wagner had paid on the stock some $170.50. On the sixth of that month, the property in question was bought by Wagner from Piper for his wife, for the sum of $788.

The defendants, Wagner and wife, had been living in a house with their six children, he paying $200 per annum rent until the house was bought from Piper. The money necessary to the purchase was procured by Mrs. Wagner and her husband executing a deed of trust to a trustee for the building and loan association to secure a note for $1,000 signed by her and her husband. This trust deed embraced the litigated lot, as well as the five shares of stock aforesaid.

Piper was paid the $788, which was done by Wagner's transferring the check to him which Wagner received as part of the proceeds of the $1,000 loan. The proceeds of another check for $137 arising from that loan Wagner collected.

This arrangement was made between Wagner and his wife regarding the property bought of Piper, just prior to such purchase: Mrs. Wagner was to buy the

house and to *rent it to her husband* for $13.33 per month
or $160 per year. By a singular coincidence, this
precise sum of $13.33 per month was just the amount
to be paid per month on the note—loan of $1,0f0.
Many of the transactions aforesaid were conducted by
Wagner alone; he deposited what he called his wife's
money in his own name, and she had never seen the
shares of stock until the hearing of this cause.

Soon after the purchase, Wagner and his wife
moved into the house and there remained until July 1,
1891. Mrs. Wagner, as she testified, paid no amount
whatever on the $1,000 note, except the $13.33 per
month paid for her by her husband to the building
and loan association. The husband at the time was
probate judge, enjoying emoluments in the way of fees
amounting to some $1,500 per year.

After the house and lot were purchased, Wagner,
wife and family lived there for several years, and dur-
ing that time improvements were made on the house
by Wagner making additions thereto, and a barn and
cistern were built, as the wife admits, costing some
$265. She testifies Wagner paid for it, but that
"part of the improvements were paid for out of her
money at the time. Dr. Wagner borrowed it, and I
afterwards paid him." But she subsequently admits
that she knew nothing about the matter only what he
told her.

In his answer, Wagner admits having expended
$575 in different sums in the years 1886, 1887, 1888,
1889, 1890 and 1891 in improvements on the property,
but in his testimony he seems to make it out that such
improvements cost a less sum. But that testimony is
extremely vague and unsatisfactory as to the amounts
expended or from what source derived.

From the time of the purchase from Piper, Wagner
continued to pay to the building and loan association

$13.33 by way of payment of house rent to his wife. These payments continued down to May 18, 1891. Wagner had all the household goods allowed by law, but claimed that he did not have the $300 of property allowed by the first and second subdivisions of section 4903, Revised Statutes, 1889, and, as provided by section 4906, should be exempt. His testimony, however, shows that his wife had a horse worth some $100, which he says he bought with her money, and he had a cow worth $50, an eastern buggy worth $100, besides another horse or two, and an old buggy worth $15, footing up some $300 worth of property.

As Wagner paid by way of rent to his wife $13.33 per month to the building and loan association from February 6, 1886, to May 18, 1891, this would foot up $839.79; add to this the $165 previously paid as dues on the five shares of stock, and it gives a total of $1,004.79.

On the judgment recovered by plaintiff in February, 1889, she sued out execution on April 11, 1891, and levied on the property as that of Wagner. After the levy was made, Wagner sold the property to Mason as the property of his wife on the eighteenth day of May, 1891, for $1,850, $600 of which was paid in cash and which Wagner has retained or invested for his wife, and a note for $1,250 given by Mason to Mrs. Wagner for the balance of the purchase money, and Wagner and wife thereupon executed to Mason a title bond conditioned for the making of a deed to the purchaser on the payment of the note for $1,250, which was made payable on or before January 1, 1892. Afterwards, on the twenty-third day of June, 1891, the property having been advertised for sale under the deed of trust, Mason, in order to protect his purchase, had to pay $229.93, to the building and loan association, and thus satisfied the residue of the $1,000 note—debt of Wagner and wife.

The sale under the execution of plaintiff took place June 20, 1891, while Wagner was in possession of the property, and plaintiff bid in the property for $50, received a deed from the sheriff, and on June 27 next following filed her petition in the nature of a creditor's bill seeking to subject the property as being Wagner's to the payment of her judgment; and making the usual allegations contained in such bills, viz., that the property was bought with Wagner's money and put in the name of his wife to shield it from his creditors, at which his wife connived. That in furtherance of that fraudulent scheme, the contract with defendant Mason was made and $600 paid by him as part purchase money of the property, a note for $1,250 given for the residue, and a title bond executed, etc., etc. That the note for $1,250 was in the custody of another defendant the Wood & Huston Bank, as stakeholder, to await the result of the present litigation. The petition concludes with appropriate prayers for relief. The Wood & Huston Bank made default, and afterwards brought the $1,250 note into court and surrendered the same. The answer of Mrs. Wagner was a general denial. The answer of Mason set forth facts pertinent to the allegations of the petition, admitted his purchase of the property on the terms already stated; alleges *as a defense* that Wagner is tenant by the curtesy inchoate; that he, defendant Mason, had to satisfy the deed of trust to the building and loan association, to the amount of $229.93, and asked that that sum be credited on his note for $1,250. He asked that he be permitted to pay the balance into court, etc., etc.

The answer of defendant Wagner, after admitting marriage of himself and wife, denies the residue of the petition, and then sets forth that in 1883 he was the owner of five shares of stock in the building and loan association, gave and transferred the same to

his wife, the value being $25.50, that he paid up the dues on the shares till February, 1886, when his wife purchased the property now in litigation from William Piper; paid for the same in cash, having secured the purchase money therefor by a mortgage to the building and loan association; that said property was thereupon rented by his wife to this defendant for $13.33 per month, which sum through him, she paid on her indebtedness to the building and loan association. The defendant Wagner then admits having made and paid for improvements on the property between years 1886 and 1891 inclusive, to the extent of $575. But the concluding portion of his answer is of such a unique character that it should not be permitted to perish from the earth. It is the following: "That all said gifts and payments were made by him for the use and benefit of his said wife; but defendant says said payments were not made to hinder, delay or defraud plaintiff or any creditor and did not hinder, delay or defraud any creditor of this defendant but that said money was not subject to seizure under execution or attachment, and could not have been subjected to the payment of any debt of defendant by any process of law. That said money was obtained by the labor of defendant during said time and that defendant had the lawful right to dispose of it in said manner and that no right of any creditor was affected thereby."

Suitable replies were filed to the answers. On the foregoing facts, the lower court found the issues for defendants and dismissed plaintiff's petition, hence this appeal.

*Leslie Orear* for appellant.

(1) There was no gift from husband to wife in this case, except as an afterthought, for the circum-

stances here show that there was no intention to create
a gift *inter vivos*.   The donor kept all of the evidences
of transfer and all the muniments of title to the stock in
his possession.   *Spencer v. Vance*, 57 Mo. 427; *McCord
v. McCord*, 77 Mo. 164; *Helfenstein's estate*, 77 Pa. St.
328; *Young v. Young*, 80 N. Y. 422; *People v. Bank*, 56
Vt. 284.   (2)   The contract of rental between Wagner
and wife was absolutely void, and could only serve the
purpose of a fraudulent design on the part of Wagner
to hinder or delay his creditors.   *Bank v. Collins*, 75
Mo. 280.   (3)   The conveyance from Piper to Mrs.
Wagner having been procured by Joseph P. Wagner,
has the effect of a voluntary conveyance, and the insolv-
ency of J. P. Wagner, at the time, makes the convey-
ance constructively fraudulent.   The insolvent husband
having paid the consideration, it does not differ from
a voluntary conveyance from the husband direct to the
wife.   *Gear v. Schrei*, 57 Iowa, 666.   (4)   The motive
or purpose with which a voluntary conveyance is made
by an insolvent, is immaterial; such a conveyance, irre-
spective of the actual intent of the debtor, is construct-
ively fraudulent as to existing creditors.   *Bohannon v.
Combs*, 79 Mo. 305; *Potter v. McDowell*, 31 Mo. 62;
*Lionberger v. Baker*, 38 Mo. 447, 453; *Goodman v. Wine-
land*, 61 Ind. 449; *Early v. Owens*, 68 Ala. 171; *Craw-
ford v. Logan*, 96 Ill. 396.   The evidence was in-
competent because the party refrained from stating
what was his intent.   (5)   But the procurement of the
conveyance from Piper to Sarah T. Wagner, by her
husband, Joseph P. Wagner, was not only construct-
ively fraudulent, but is void as to existing creditors for
actual fraud, well understood between Wagner and
wife, at the time, and participated in by both.   Mere
conveyance to a married woman, during coverture of
real estate, the husband being insolvent, raises the pre-
sumption that the purchase was with the means of the

husband, and placed the burden of proof upon her to show, by the most satisfactory evidence, that the purchase was with her separate means. *Sloan v. Torry*, 78 Mo. 623; *White v. Clasby*, 101 Mo. 162; *Seitz v. Mitchell*, 94 U. S. 580. (6) There is no merit in the claim of the defendant, J. P. Wagner, either in law or equity, that the payments made by him on his joint note for $1,000 given by himself and wife to raise the purchase money for the house and lot in controversy, were made by him as agent for his wife, and as a settlement upon, or gift to, her. (7) The claim of defendant J. P. Wagner, that these payments were less in amount every time than $300, and that they were exempt from seizure by creditors, and that they could not be the subject of a fraudulent transfer, is not founded on a proper construction of the statute of exemptions. See *Kulage v. Schuler*, 7 Mo. App. 250; *Alt v. Bank*, 9 Mo. App. 91; *Weinrich v. Koelling*, 21 Mo. App. 133; *Stotesbury v. Kirtland*, 35 Mo. App. 148; *State to use v. Koch*, 47 Mo. App. 269. The case relied on by defendant Wagner for the upholding of the contrary doctrine was founded on a statute radically different from the Missouri law. We respectfully ask this court to reverse the judgment of the circuit court and direct that a decree be entered herein, awarding Mrs. Garrett her just debt and expenses of litigation, and decreeing the title to the lot in controversy be vested in the defendant, Mason, upon payment by him of the balance of the purchase money, and that the claim of Mrs. Garrett be made a charge thereon till it shall be paid.

*Boyd & Murrell* for respondents.

(1) By indorsing the certificates of stock, September 7, 1883, pay to Mrs. S. T. Wagner, signed J. P. Wagner, and attested by Ed. F. Nichols, secre-

tary of the building and loan association, and by the indorsement on the book brought to Dr. Wagner by Nichols, as follows: "Transferred to Mrs. Wagner September 7, 1889;" Wagner lost all dominion and control over them, and the title passed to Mrs. Wagner. *Martin v. Funk*, 75 N. Y. 134; s. c., 31 Am. Rep. 448; *Lane v. Ewing*, 31 Mo. 84; *Minor v. Rogers*, 40 Conn. 512; s. c., 16 Am. Rep. 69; *Love v. Francis*, 63 Mich. 181; s. c., 6 Am. State Rep. 547; *Schuster v. Schuster*, 93 Mo. 438; *Schaffer v. Kugler*, 107 Mo. 59; *Pitts v. Sheriff*, 108 Mo. 110; note to *Wilder v. Brooks*, 88 Am. Dec. 54; note to *Williamson v. Yager*, 34 Am. State Rep. 212; *Crook v. Bank*, 35 Am. State Rep. 23. (2) The building and loan shares of stock were not subject to execution at the time they were transferred to Mrs. Wagner. The evidence shows conclusively that at the time, and at all times subsequent, down to the time of the sale to Mason in 1891, Dr. Wagner had no property which any creditor could have taken under execution. He had, therefore, the right to dispose of what he did have in any way he chose; and, having such right, no charge of fraud as to creditors could be predicated upon any act of his in relation to his exempt property. His creditors had no interest in it, and could not be effected by any transfer of it. See Thompson on Homesteads and Exemptions, sec. 738; *State v. Koch*, 47 Mo. App. 269; *Vogler v. Montgomery*, 54 Mo. 577; *Holland v. Kreider*, 86 Mo. 59; *Wilson v. Taylor*, 49 Kan. 774; s. c., 31 Pac. Rep. 697; *Fuller v. Whitlock*, 13 S. Rep. (Ala.) ——; *Paddock v. Lance*, 94 Mo. 285. (3) The charge of plaintiff's petition is that the lot in controversy was purchased by defendant, J. P. Wagner, and paid for by him out of his own money and means, and had the title placed in his wife for the purpose of defrauding plaintiff, who was a creditor of

said J. P. Wagner. The fact as shown by the evidence is that the lot was paid for by Mrs. S. T. Wagner with money she had borrowed of the building and loan association on the five shares of stock which had been transferred to her in September, 1883, and by giving a deed of trust on the lot to further secure the loan. So, that the charge of fraud is really based on the transfer of the stock in 1883, five years and more before the institution of this suit, and which was, therefore, barred by the statute of limitation. See *Rogers v. Brown*, 61 Mo. 193. (4) It is further submitted that appellant's abstract is insufficient to show her entitled to any relief. It does not show that any execution was ever issued upon the judgment mentioned in the plaintiff's petition and admitted in the answer. The record shows no execution, and the recitals of the sheriff's deed, as set forth in his abstract, do not show that the execution therein referred to was ever issued from any court in Missouri, or was founded upon the judgment referred to in the pleadings.

SHERWOOD, J.—I. If we add together the amounts paid by Wagner, to wit:

Dues paid on the five shares of stock from September 7, 1883, to February 6, 1886, after the stock was assigned to his wife, we have.................... .... .... .................. ..... .... $   145.00

If to this we add the sum Wagner had previously paid in dues, we have.............................. ... ..................    25.50

$   170.50

Then, if we add the sums paid on the land as rents to his wife between February 6, 1886, and May, 1891, we have.  .....    839.79

$1,010.29

If to this sum we add the amount for improvements made by Wagner, as admitted by his answer, to wit................    575.00

we have........ . ..................... ............. ......$1,585.29

In consequence of the vexatiously indefinite nature of Wagner's testimony as to the amounts he expended in improvements on the property, and in consequence

of his wife's knowing nothing about the matter only as he told her, we shall assume that the solemn admissions of Wagner's answer are correct, and that he actually expended $575 in improving what he terms his "wife's property." And we make this assumption the more readily, because: Presumptively, the personal property of the wife is that of the husband, at least, before the statute of 1875, section 3296, Revised Statutes, 1879, went into operation. *Weil v. Simmons*, 66 Mo. *loc. cit.* 620.

In *Seitz v. Mitchell*, 94 U. S. 580, it was ruled that in the absence of evidence that the wife purchased the property with her own separate funds, the presumption is a *violent* one that the husband furnished the means of payment.

Under the operation of the present law, when the claims of creditors intervene, it is not too much to require that something more tangible be offered in the way of evidence of the wife's being possessed of separate means, than to say, *"my wife's money,"* or *"my wife had money of her own,"* without showing the source whence her means were derived.

Now it is clear that the gift of the five shares of stock and the payment of dues thereon for several years can not stand against the claims of creditors, the donor being an insolvent at the times of the gift and of the payment of the dues. And the motive which prompts the gift or voluntary conveyance is wholly immaterial. Such a conveyance is constructively fraudulent as to existing creditors, and can not withstand their attacks. *Bohannon v. Coombs*, 79 Mo. 305.

As the motive with which the gift or voluntary conveyance is made is immaterial, so must evidence be incompetent when endeavored to be elicited from the donor or grantor that he "did *not intend*" to defraud his creditors. In such case the alleged hidden motive

is overborne and nullified by the physical facts in the case; for, in such instances, acts speak louder than words. *Babcock v. Eckler*, 24 N. Y. 623.

But the extraordinary claim is made by Wagner that, as, during all those years, from 1883 to 1891, at any one time he did not have $300 worth of personal property, therefore, he could bestow on whom he would and as he pleased, all he accumulated from time to time, so long as it did not at the time reach beyond the high water mark of $300. It must be confessed that if such a scheme could be made operative, the exemption provided for in execution laws would be greatly expanded and feel the sudden impetus of a wonderfully abnormal growth. Besides, this thing of exemption is a *personal privilege*, and can only be exercised when the officer calls with the writ or makes a levy, and then only for the benefit of the *claimant* and not for the benefit of *another*. *Osborne v. Schutt*, 67 Mo. 712.

Such claim must be made to avert a *threatened seizure* or levy, or to defeat a levy already made. There is no possibility of such claim being asserted, except under the conditions mentioned, and the claimant must be in *possession* of the property. *Stotesbury v. Kirtland*, 35 Mo. App. 148; *Weinrich v. Koelling*, 21 Mo. App. 133; *State to use v. Koch*, 47 Mo. App. 269; *Alt v. Bank*, 9 Mo. App. 91.

Again, the claim of the exemption when exercised, as in this case, could be exercised only on the property *as aggregated at the time the claim is made*; it could not be so operated as to create a series of *nunc pro tunc exemptions*, reaching back and each striking the growing fund in the nick of time, just before it attained the $300 limit. And then the claim is not made by the *wife* nor asserted in her answer, which alone would be fatal to the success of any supposed right on her part.

This claim, however, has the merit of *novelty* and *audacity*, and reminds one of the expression used by DeQuincey, where he speaks of Coleridge's *"resplendent acreage of cheek."*

In the case in hand, just the two items of $575 for improvements and that of the payment of dues on the stock during the years between 1883 and 1886 would more than double the exemption allowed by the statute, to say nothing of the personal property owned by the husband and also by the wife, nearly or quite reaching in value $300, nor of the $329 that was to the credit of the husband about the first of January, 1890.

We come now to the point respecting the *rent business*. This we regard as a mere subterfuge and a very diaphanous one at that, employed to cover up the means of the husband under the guise of a conveyance to the wife, and resembles in some of its incidents *Miller's case*, 120 Mo. 466.

II. The effect of the execution sale and deed to plaintiff was to transfer to her all the right, title, interest and estate of Joseph P. Wagner in the lot in litigation, burdened, however, with the cloud cast upon that title by the fraudulent conveyance to his wife. With this cloud removed, as it ought to be, she can read her title clear to whatever interest Wagner had in the property.

We have been cited to the case of *Woodard v. Mastin*, 106 Mo. *loc. cit.* 364, as announcing a different rule, and we are asked to follow that case, which declares that a plaintiff creditor who buys at an execution sale *does not get the land he buys*, but only the right to have his debt and interest satisfied out of the land, as well as his costs and *attorney's fees*, etc., etc. We are constrained to disapprove the ruling in that case, not regarding it as sound. Under its teachings the only risk a fraudulent debtor would run would be, not the loss of the land

he had fraudulently acquired, but only the debt he originally owed, interest, costs, and *attorney's fees*. Such a ruling, it seems, would be productive of bad and unwarranted results.

III.   Defendant Mason in his answer does not allege that he is a "purchaser in good faith without notice." See *Holdsworth v. Shannon*, 113 Mo. *loc. cit.* 524; *Conn. Mut. Ins. Co. v. Smith*, 117 Mo. *loc. cit.* 293.

If Mason is indeed a purchaser in good faith, then the only interest plaintiff acquired by reason of the execution sale, was the right of subrogation to the $1,250 note, and interest, less the payment made by Mason of $229.93, which went to satisfy the deed of trust.

In order that the lower court may conform its action to the foregoing views, we reverse the decree and remand the cause.   All concur.