## ROBERT CALDWELL v. DENNIS RYAN, Appellant.

**In Banc, February 27, 1908.**

1. **REPLEVIN: No Assessment of Value: Subsequent Suit for Conversion.** Ryan brought suit in replevin against Caldwell for two mules, which resulted in a judgment in favor of Caldwell for the return of the mules, but there was no assessment of their value, and pending the suit Ryan sold them, and this suit is to recover $200 as for conversion. *Held*, that, while the verdict in the replevin suit should have gone further and assessed their value, Caldwell is not precluded from recovering their value in the suit for conversion. The judgment in replevin established Caldwell's right to the mules, and Ryan's disposal of them while that suit was pending amounted to a conversion of them to his own use, and he at once became liable to Caldwell for their value.

2. **EXEMPTION: No Place in Pleading: Conversion: Set-off.** Where plaintiff sued in conversion, and defendant set up prior judgments as a set-off, plaintiff cannot in his reply plead that the amount he hopes to recover is exempt from execution and therefore defendant's set-off cannot be allowed. The plea of exemption is no part of the cause of action, and has no place

210 Sup—2

in the pleadings. Pleadings have nothing to do with the en-
forcement of the judgment after it is obtained.

3. **SET-OFF: Judgments Against Tort: Pleading.** Where plaintiff
sues for conversion defendant cannot plead judgments as a
set-off. Conversion is an action sounding in tort, and judgments
are in contract, and the statute allows set-off only when the
demands come under the classification of debts, and a demand
of damages for a tort is not a debt.

4. ———: **Statutory Right: Equitable Right.** The right of set-off
in this State is not dependent on the ancient equitable doctrine
of set-off; it is a positive legal right given by statute, and the
procedure to enforce it is also prescribed by statute.

5. ———: **Judgment Against Judgment: Exemptions: Execution:
Exemption Circumvented by Replevin and Set-off.** Against
plaintiff's judgment in conversion defendant may, at the time
of execution, set off judgments which he holds against plaintiff,
even though the things converted to his use by defendant
were themselves exempt from execution. That is the language
of the Statute of Set-Off, and the courts have no authority to
read into the statute an exemption it does not contain; besides,
it comports with common honesty. Exemption right is to be as-
serted at the time of execution, and the statute prescribes that
executions between the same parties may be set off the one
against the other. The proper course is to try the suit for con-
version, and if plaintiff recovers, and then if executions on
plaintiff's judgment against defendant and on defendant's
judgments against plaintiff come into the sheriff's hands, it is
his plain duty, under sections 4497 and 4498, R. S. 1899, to set
off defendant's judgments with plaintiff's, and he will have
nothing to do with the Statute of Exemptions until he under-
takes to levy the balance due defendant out of plaintiff's prop-
erty. [Disapproving Wagner v. Furniture Co., 63 Mo. App. 206;
Lewis v. Gill, 76 Mo. App. 504; State to use v. Hudson, 86 Mo.
App. 501; Bowen v. City of Holden, 95 Mo. App. 1.]

*Held*, by **Lamm, J.**, in a dissenting opinion, in which **Graves, J.**,
concurs, that the exemption right of the debtor cannot be
circumvented or extinguished by the machinery of set-off.
In administering the Statute of Set-Off, its cold, naked,
rigid letter should not be followed, but its letter must give
way to the spirit of the exemption statutes. Hence where
defendant held certain judgments against plaintiff and sued
him in replevin for two mules and failing in that suit and,
having sold the mules during its pendency and appropriated
the money to his own use, was in turn sued for the value of
the mules as for conversion, he should not be permitted, on
execution, to set-off against plaintiff's judgment in the suit

for conversion his own judgments against plaintiff; but the judgment in conversion stands for the mules, and the mules being exempt so is the judgment.

6. ———: ———: **One Debt Against Another.** The right of plaintiff to hold property exempt from execution does not impair the right of a defendant to set-off a debt the plaintiff owes him against a debt he owes plaintiff. The meaning of the Statute of Set-Off is that the defendant is not to be adjudged indebted to the plaintiff unless it be in a sum in excess of the amount in which plaintiff is indebted to him, and then the judgment goes only for the excess. [**Lamm and Graves, JJ., dissenting.**]

7. ———: ———: ———: **Right of Debtor.** A debtor has no right to hold as exempt anything that is not his own; that is not his own which he neither has in possession nor the right now or in the future to reduce to possession. The Statute of Exemption was made to cover, as with a shield, what the unfortunate debtor has in his possession when the officer comes with a writ to take it from him; it was not made to arm him, as with a sword, to levy contribution on his neighbor whom he owes.

Transferred from Kansas City Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*Wilson & Clapp* for appellant.

*Wattenbarger & Bingham* for respondent.

If appellant's interpretation of the law be correct, the exemption statutes of this State are a delusion—an enactment without weight or substance. The law is well settled in this State that a debtor is entitled to three hundred dollars exempt to him as the head of a family, under section 3162, Revised Statutes 1899, in addition to his household goods and other property mentioned in section 3159, Revised Statutes 1899. Bank v. Borgfeld, 93 Mo. App. 62. Caldwell in his replication specifically claimed his exemptions, and the court found that he was a married man and the head of a family and entitled to claim the judgment rendered in his favor as exempt by law, and that Ryan was not en-

titled to have his judgment set off against that of plaintiff's. Wagner v. Furn. Co., 63 Mo. App. 206. Caldwell sued for the value of his mules, the only property he possessed, and to say now that Ryan can bring in his judgment as a set-off and completely absorb Caldwell's judgment, would be nothing more nor less than a seizure of exempt property, and would at once destroy the intended benefit of the statutes to those entitled to protection under them. Caldwell v. Renfro, 73 S. W. 340; Lewis v. Gill, 76 Mo. App. 504; State to use v. Hudson, 86 Mo. App. 501; Bowen v. City of Holden, 95 Mo. App. 1.

VALLIANT, J.—This is a suit to recover the value of two mules which plaintiff avers belonged to him and were unlawfully converted by defendant.

Prior to this suit, the defendant, Ryan, had brought an action of replevin against the plaintiff, Caldwell, for the possession of the mules, and having given bond according to the statute the mules were by the constable taken from Caldwell and delivered to Ryan. Pending that replevin suit Ryan caused the mules to be sold under a chattel mortgage which he held. The replevin suit resulted in a judgment in favor of Caldwell for the return of the mules, but there was no assessment of their value, hence no judgment in the alternative against Ryan for their value. When the replevin suit ended and the mules were not forthcoming to satisfy the judgment and Caldwell having no judgment therein for their value, he brought this suit to recover $200 as for their conversion. The defendant's answer was a general denial, and a "set-off and counterclaim," consisting of two judgments previously rendered in his favor against the plaintiff amounting with interest to $718.92.

Plaintiff in his reply alleged that he was the head of a family and as such was entitled to hold the judg-

ment he was seeking to recover against the defendant exempt from execution under section 3159, Revised Statutes 1899, he having no other property, and therefore the defendant had no right to set-off his judgments against it.

The trial resulted in a judgment for the plaintiff for $189.70 on his demand, and in favor of defendant for $718.92 on his counterclaim, but it was adjudged that the defendant was not entitled to offset the judgment against him by his judgment against the plaintiff. Therefore execution was awarded in plaintiff's favor for $189.70 and costs, and also judgment in favor of defendant on his counterclaim, for $718.92 and costs, and execution awarded. From the judgment in favor of the plaintiff the defendant has appealed. The appeal was taken to the Kansas City Court of Appeals, where the judgment was affirmed, but one of the judges of that court being of the opinion that the decision was in conflict with the law as declared by this court in Garrett v. Wagner, 125 Mo. 450, and by the St. Louis Court of Appeals in Weinrich v. Koelling, 21 Mo. App. 133, the cause was transferred to this court.

Defendant's assignment of errors cover three points:

1. That the plaintiff having failed to have the value of the mules assessed in the replevin suit is precluded now from recovering their value in a suit for conversion.

2. That the court erred in including in the assessment of plaintiff's damages an item of $25 expenses he incurred in the former suit.

3. That the court erred in refusing to allow the defendant to offset his counterclaim against the plaintiff's demand.

After the judgment was rendered the plaintiff entered a *remittitur* as to the disputed item of $25, therefore that assignment is out of the case.

I. The result of the replevin suit was a judgment that the mules belonged to Caldwell, the plaintiff in this suit, and that he was entitled to the possession; the verdict should have gone further and assessed the value of the mules, and the judgment should have followed the verdict and have given Caldwell the choice to take the mules or their value. [Secs. 3921, 4473, and 4474, R. S. 1899.] But in point of fact the only thing adjudged was that they were Caldwell's mules. Defendant Ryan now thinks that because the plaintiff acquiesced in the judgment as it was he has no right to call him to account for the value of the mules wrongfully disposed of while the replevin suit was pending. The Kansas City Court of Appeals ruled that point against defendant and correctly so. The purpose of this statute was to settle in the one suit all questions that might arise out of the alleged unlawful taking or detention of the property. The assessment of the value was for the benefit of the party found to be entitled to the possession of the property and the law gave him the right to elect which he would take, the property or its value. If his choice was the property, not its money value, and if the property was forthcoming to satisfy the judgment, the assessment would be of no consequence to him. His acquiescence in a judgment for the possession when there was no assessment of value would place him in the same condition that he would have been placed by his election to take the property instead of the assessed value if there had been an assessment. Defendant relies on White v. Van Houten, 51 Mo. 577, wherein the court said: "The law surely contemplated, that when the case was prosecuted to final judgment, all questions of value, damages and costs, should be disposed of in the same proceeding." And the court held that the plaintiff in that case could not in an action on the replevin bond recover damages for the detention of the property when none had been

assessed by the jury in the replevin suit. But there was a material difference between that replevin suit and the one we are now discussing; there, as here, the plaintiff had sued in replevin before a justice of the peace, had given bond and the property had been delivered to him, on the trial the judgment was against him, but there was an assessment of the value of the property, but none of damages for detention, whereupon he delivered the property to the defendant and paid the costs. The subsequent suit was on the replevin bond to recover damages for detention and it was held that the suit could not be maintained.

In the case at bar we hold that the judgment in the replevin suit was good as far as it went, that it established the right of Caldwell to the possession of the mules, and we further hold that Ryan's disposal of the mules while that suit was pending amounted to a conversion of them to his own use and he was liable to the plaintiff for their value.

II. The defendant in his answer calls his demand a "set-off and counterclaim." There is a difference between a set-off and a counterclaim, each is the creature of a separate statute. [McAdow v. Ross, 53 Mo. 199.] The law of counterclaim comes under the Code of Civil Procedure, but the statute of set-off was in our books long before the code was adopted (R. S. 1825, p. 738; R. S. 1835, p. 579) and is substantially now as it was in 1835. [Sec. 4487, R. S. 1899.] A counterclaim and set-off are different in some respects though they bear close resemblance in some other features. But there is no occasion now to discuss the points of difference and those of resemblance between a counterclaim and a set-off, because in this case both parties and the trial court construed the defendant's answer as intended to plead a set-off and that was doubtless correct. The defendant was insisting on having his debts, for which he already had two judgments, set-off against

whatever judgment the plaintiff might obtain against him, while the plaintiff was insisting that the set-off should not be allowed because the judgment that he hoped to recover would, when recovered, be exempt from execution.

The plaintiff's reply to the defendant's answer, that is, so much of it as stated facts intended to make out a case of exemption from execution, was foreign to the office of pleadings. Pleadings relate to the cause of action, either to support or to defeat it; they have nothing to do with the enforcement of the judgment after it is obtained. The office of the petition is to state facts constituting the cause of action, the office of the answer to deny the statements or to state other facts to avoid the cause of action, and the office of the reply is to deny the new matter in the answer or to state other facts which go to show that the plaintiff should not be precluded in his recovery by reason of the new facts stated in the answer. There is no place in the pleadings for the claim of exemption from execution, except of course where the cause of action or defense arises out of the exemption statute, as, for example, where the plaintiff's exempt property has been wrongfully seized or where the attempt is to take from a defendant property which the statute of exemption allows him to hold. But where the plaintiff's cause of action is not based on an infringement of rights under the exemption statute, a plea that the judgment sought to be recovered should, when recovered, be adjudged as exempt from execution has no place in the office of pleading. That, however, was the plea in the plaintiff's reply in this case and it was sustained by the trial court.

The plaintiff's sole contention, in reference to the set-off, in the trial court was that because he was the head of a family and had no other property he was entitled to hold as exempt from execution the money

that he was seeking to recover in this suit, and, *ergo,* the defendant could not set-off against it the amount he owed defendant. The court rightly held that the set-off could not be allowed, but erroneously based the holding on the plea of the statute of exemption. The ground on which the set-off should have been denied is that the defendant's claim is in contract, that is, in judgment, while the plaintiff's claim is in tort.

The statute relating to set-off is section 4487, Revised Statutes 1899: "If any two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set-off against the other, although such debts are of a different nature."

Under this statute, when the parties are mutually indebted, one debt may be set-off against the other, though they differ in character, that is, though the mutual debts may be simple contract, covenant, or judgment, but the demands must come under the classification of debts, the parties must be "mutually indebted." A demand of damages for a tort is not a debt and is not embraced in the statute of set-off. [State to use v. Modrell, 15 Mo. 421.]

In the case just cited the court said: "There must be a debt on the part of the plaintiff, as well as on the part of the defendant, to authorize a set-off. The test given by Chief Justice KENT is, that the indebtedness for which the action is brought must be such that if the plaintiff were sued by the defendant upon the set-off claimed, he could claim his cause of action in that suit as a set-off. [Gordon v. Bowne, 2 Johns. 150.]" Applying that test, if the defendant had sued the plaintiff on these two judgments could the plaintiff have pleaded his claim of damages for the conversion of the mules as a set-off? The ruling in that case has been followed in other cases: Johnson v. Jones, 16 Mo. 494;

Mahan v. Ross, 18 Mo. 121; Pratt v. Menkens, 18 Mo. 158; State ex rel. v. Eldridge, 65 Mo. 584.

The trial court in this case, therefore, was right in holding that the defendant could not set-off the debt due him against the plaintiff's demand, and the court would have been justified in striking out the plea of set-off entirely, on the ground that a debt could not be set off against a demand for damages arising in a tort. And if the court had gone no farther than to render judgment for the plaintiff for the value of the mules in the face of the defendant's plea of set-off, the judgment could not be disturbed, because the presumption would be that the court so ruled on the ground that it was not a case of mutual indebtedness; therefore, not a case for set-off. If the court had stopped at that point it would have left the plaintiff with his judgment and the defendant with his, and each entitled to sue out execution. Then when the executions were in the hands of the sheriff the rights of the parties would be adjusted as prescribed in sections 4496 and 4497, Revised Statutes 1899. But the court did not stop there; it went on in its judgment to say that the plaintiff was a married man, head of a family, and entitled to claim the judgment in his favor as exempt by law. That would doubtless be construed by the sheriff as a direction to him that he was not to execute the writs in the manner prescribed in the two sections of the statute just quoted, but was to levy the plaintiff's execution on defendant's property and leave the defendant without recourse for the debt due him, which would have been to violate the statute.

The plaintiff's proposition is that because he is the head of a family and would be entitled to hold the amount of this judgment, if he had it in hand, against any execution or attachment that might come against him, therefore, not having it in hand, he is entitled to levy it of defendant's goods, although he is justly in-

debted to the defendant for a larger sum—he must have his debt and the defendant must go unsatisfied for what the plaintiff owes him.   That is what the court decided and it is in accordance with the decision of the Kansas City Court of Appeals in Wagner v. Furniture Co., 63 Mo. App. 206, although there were circumstances in that case which would distinguish it from this case, if the right of set-off in this State now depended on the ancient equitable doctrine of set-off to be administered as it might seem right to the chancellor *ex aequo et bono*.   But the right of set-off in Missouri is not given or withheld as the conscience of the chancellor in a given case may dictate, it is a positive legal right given by statute.   The Kansas City Court of Appeals in the case above named relied chiefly on certain  Indiana cases, the first of which, and which is referred to as the authority of the later cases on that subject in that State, is Puett v. Beard, 86 Ind. 172.   But in that case the Indiana court said: "The right to set off one judgment against another is purely equitable, and allowed only where good conscience requires it."   And again on page 178, the court said:  "The practice in a proceeding to set off one judgment against another is not prescribed by any statute, nor is the right to order it done conferred upon the courts by any legislative enactment; but courts possess the authority, as they do many other powers, in virtue of their general equitable authority over officers and suitors, and as one of the inherent judicial powers which are necessary to the existence of a court."   These quotations show the difference between the right of set-off in Indiana and that right in Missouri.

The Indiana court was right in saying that set-off was in the beginning a creature of equity jurisprudence, and that it was not known to the common law. [Waterman on Set-Off (2 Ed.), p. 18; *Idem*, p. 383.] It is a doctrine so absolutely necessary to the adminis-

tration of justice that a court of equity could not fail
to supply it when the common law had omitted it. And
if, as the Indiana court said, there was no statute in
that State directing the practice in proceedings to set-
off one judgment against another, the jurisdiction to
do so was inherent in the court exercising equity juris-
diction, or in a court of law administering justice ac-
cording to the equitable principle. But in Missouri the
right of set-off is given by statute and the procedure
to enforce it is also prescribed by statute and the courts
have authority only to enforce the law as it is written.
The following are our statutes on this subject:

"Sec. 4493. A set-off shall be pleaded in the man-
ner provided by law, and if the amount of set-off be
equal to the plaintiff's demand, the plaintiff shall re-
cover nothing by his action; if it be less than the plain-
tiff's demand, he shall have judgment for the residue
only.

"Sec. 4494. If there be found a balance due from
the plaintiff to the defendant, judgment shall be ren-
dered for the defendant for the amount thereof, to-
gether with costs."

If a plaintiff's cause of action and a defendant's
set-off are in the character of mutual indebtedness, sec-
tions 4493 and 4494 prescribe how they shall be pleaded
and how adjusted in the judgment of the court. But
if, as in the case at bar, the claim of one of the par-
ties is founded in tort and the other in contract, then
the case is not one of mutual indebtedness and the set-
off will not be allowed in the judgment. When, how-
ever, as in the case at bar, the plaintiff has reduced
his claim to a judgment, then he may sue out execution
on his judgment and the defendant may likewise have
execution on his, and both executions coming into the
hands of the sheriff the statute prescribes in unequivo-
cal terms how the sheriff shall proceed to execute the
writs. Section 4497 directs the sheriff, in such case,

how to proceed to set-off one execution against the other, satisfying the smaller by applying the amount as far as it will go to the satisfaction of the larger, then levying the balance and endorsing the fact of set-off on both writs in his returns. Then section 4498, immediately following, specifies certain exceptions and gives explicit directions that in certain cases set-off shall not be allowed. *Expressum facit cessare tacitum,* which a celebrated English writer of the eighteenth century has said may be freely translated: "Where a lawgiver sets down plainly his whole meaning, we are prevented from making him mean what we please ourselves." Here the lawgiver has plainly set down the general rule and has as plainly set down the exceptions. It could not have been intended by the Legislature to clothe the sheriff with judicial power to adjust the rights of the parties on principles of equity, the statute lays down for him a plain executive duty to perform. If in this case the defendant had not attempted to plead his judgments as a set-off but had waited until the plaintiff had sued out an execution on his judgment and had then sued out executions on his own, the case would have been simplified.

When in this case the execution on the plaintiff's judgment against the defendant and the executions on the defendant's judgments against the plaintiff come into the sheriff's hands, that officer will find all the directions he needs in sections 4497 and 4498; he will have nothing to do with the statute of exemptions until he undertakes to levy the balance due defendant out of plaintiff's property, then if the officer should undertake to seize property of plaintiff which is exempt from execution the plaintiff may claim his exemption.

The right of a plaintiff to hold property exempt from execution does not impair the right of a defendant to set off a debt the plaintiff owes him against a debt he owes the plaintiff. The meaning of the statute of

set-off is that the defendant is not to be adjudged indebted to the plaintiff unless it be in a sum beyond the amount in which the plaintiff is found to be indebted to him and then the judgment goes only for the excess. That is not only what the statute expressly says but it is what common honesty dictates. To the extent that the plaintiff is indebted to the defendant there is nothing owing to him from the defendant, the defendant has nothing in his hands belonging to the plaintiff either to be reached by execution or set apart to him as exempt.

The statute creating exemptions of personal property is found in the Revised Statutes only in the chapter on Executions, and the directions for securing its benefit to the debtor are also found only in that chapter. It has been held by this court and the St. Louis Court of Appeals that a claim for exemption can arise only when the officer comes with the writ. [Garrett v. Wagner, 125 Mo. 450; Weinrich v. Koelling, 21 Mo. App. 133.]

If a court could ever be justified in holding that a plaintiff may seize and sell a defendant's property to pay a debt which the defendant owes the plaintiff, while at the same time the court finds that the plaintiff owes the defendant an equal or larger debt for which he can have no reciprocal satisfaction, it would be only when the General Assembly had so written the law in terms too plain for construction.

The statutes of exemption were conceived in mercy for the unfortunate debtor and are to be construed in that spirit, but they are not to be construed to give him what in common honesty does not belong to him. A debtor has no right to hold as exempt anything that is not his own; that is not his own of which he neither has possession nor the right now or in the future to reduce to possession. The statute of exemption was made to cover as with a shield what the unfortunate

debtor has in his possession when the officer comes with a writ to take it from him; it was not made to arm him as with a sword to levy contribution on his neighbor.

We hold that the right of set-off is not subordinate to the right of exemption from execution, and therefore to the extent that the following cases hold the contrary they are hereby overruled; viz.: Wagner v. Furniture Company, 63 Mo. App. 206; Lewis v. Gill, 76 Mo. App. 504; State to use v. Hudson, 86 Mo. App. 501; Bowen v. City of Holden, 95 Mo. App. 1.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to dismiss without prejudice so much of the defendant's answer as affirmatively pleads his two judgments as set-offs, or suffer him to dismiss it, and to render judgment for the plaintiff for $164.70, being what the court found to be the value of the mules, $150, plus $14.70, interest up to the date of that finding, and the costs in that court.

*Gantt, C. J., Burgess, Fox* and *Woodson, JJ.*, concur; *Lamm, J.*, files dissenting opinion in which *Graves, J.*, concurs.

## DISSENTING OPINION.

LAMM, J.—I agree to the first paragraph of my Brother's opinion and to so much of the second paragraph as holds that the two judgments Ryan held against Caldwell could not be pleaded by answer as a set-off against Caldwell's claim for unliquidated damages sounding in tort for the wrongful conversion of his two mules. If A sues B for damages for assault and battery, B may not by answer set-off a promissory note or a judgment debt against A's claim for the tort.

But in so far as the opinion in terms and by name overrules Wagner v. Furniture Co., 63 Mo. App. 206;

Lewis v. Gill, 76 Mo. App. 504; State to use v. Hudson, 86 Mo. App. 501; Bowen v. City of Holden, 95 Mo. App. 1, and in so far as it, in effect, holds that the letter of the set-off statute overrides the spirit of the exemption statute, and in so far as it is warrant of authority to the sheriff to set-off Caldwell's smaller judgment against Ryan's two larger judgments when mutual executions come into his hands, I dissent.

The intent of the law-giver, when that can be got at, must be read into the letter of the law. The purpose of the law illuminates the text. Statutes on the same subject-matter must be construed together and no part of the obvious legislative intent must perish by construction. These are good sayings, worthy of all acceptance. The statute of set-off and the statute of exemptions come into court in a given case hand in hand. Full effect must be given to every written provision of each of them, provided they can be reconciled and made harmonious. If, however, the dry letter of the text in the one seems to run counter to the dry letter of the text in the other, then what shall we do? Or, what is more to the point, if the dry letter of the one, rigidly applied, strikes down the large and good purpose of the other, then what shall we do? Are the courts powerless? By no means. We are not driven to a narrow view. We need not sourly say that the letter of the statute on set-off should be followed though to do so destroys the great purpose of the exemption law— though in following it we put it within the power of a creditor to circumvent its wise public policy—nay more, give the aid of the law to the wrong-doer. Precisely that result would follow if we do not stand like a stone wall between that law and those who seek its emasculation or overthrow by one oblique device or another. Such is our settled policy on the usury law (a law peculiarly subject to shrewd and heartless circumvention), why not here?

Take a case—A owes B and B puts his claim in judgment. Everything that A has, including two mules, is exempt. B knows that to be so and casts about, in his mind, for some plan to circumvent the exemption laws and to coerce payment from A in spite of the law. He cannot levy an execution on the mules. The statute is in his way. An execution failing, he tries replevin (any other trick would do as well). Having wrongfully got possession under his writ, he does not abide the result of the suit but wrongfully sells the mules and pockets the money. Return of the mules is thereby made impossible. Presently he is cast in the replevin suit. The exempt mules being out of the way, A sues him in conversion for their value. Judgment goes in favor of A and execution issues. B then sues out execution on his former judgment and when the mutual executions come into the hands of the sheriff, are we to be told that the exemption law no longer applies, but the set-off statute applies, which statute with stiff letter tells the sheriff he must set off A's judgment against B's? There is no escape from the conclusion that if the law allows that, then the law allows B to wrongfully convert A's exempt property and thereby pay his debt by such wrongful conversion. If that be the law then the maxim, "No one shall profit by his own wrong," is whistled down the wind, and in its place we put a new doctrine to the effect that the exemption law only controls those who obey it in its spirit and acquiesce in its humane and benevolent provisions, but it may be dodged and laughed at by the long-headed and cunning, who have the wish and will to shoot out their lip at it. To my mind the judgment for the value of the mules stands for the mules themselves, and, the mules being exempt, so is the judgment.

The proposition under discussion is not new to the

courts. In Wilson v. McElroy, 32 Pa. St. 82, McElroy's exempt property was seized and sold. Thereupon he instituted an action in trespass. The court below charged, as follows: "Another point arises on the question of damages which calls for our opinion. Ordinarily, when a debt of the owner is paid by an unlawful judicial sale of his property it is allowable to take it into account in mitigation of damages. . . . . But in this case, under the exemption law, it is not allowable to deduct that amount from the value of the property—were it otherwise, the object of the law could be easily frustrated. A creditor having a claim of $500, otherwise hopeless, could seize the $300 worth of property, and allow for it the whole amount of his claim, which would be more than the damages sustained. Thus the creditor would get part of his debt and the debtor's family nothing. This might be just and fair, but would not carry out the intent of the law." On that charge it was ruled on appeal: "There is no soundness in the error assigned to the charge of the court, on the subject of defalcating the amount of the debt extinguished, or alleged so to be, by the sale made. To allow it in an action of trespass for disregarding a debtor's demand of the benefit of the exemption law, would in most cases result in a palpable evasion of the humane provisions of the act of Assembly."

In a later case in that court, Thall's Appeal, 119 Pa. St. 425, it appears that Thall (an old man) conveyed all his property to his son-in-law, Chilson, and Chilson undertook to support him and his wife during their natural lives. Becoming dissatisfied with the arrangement, Thall sued in equity to cancel the conveyance but was cast in that suit and costs were adjudged against him to the amount of $400. It seems the parties thereupon made a new arrangement by which the son-in-law was to pay Thall $150, per annum, in quarterly payments. The son-in-law undertook to enforce

his judgment for costs by execution, which was returned *nulla bona*. Thereupon, he went into equity and sued to have his judgment for costs set off against said yearly allowance until fully paid. It was held that at law Thall was entitled to the benefit of the exemption laws and what the plaintiff could not do at law by way of stripping this old man of his support he could not do in equity.

In Beckman v. Manlove, 18 Cal. 388, Beckman recovered judgment against Manlove, a sheriff, for seizing and selling exempt property under execution. Thereupon the sheriff procured an assignment of the judgment against Beckman upon which the execution issued and moved the court to set-off the later judgment against the former. His motion being denied, he appealed. The court, by COPE, J., (STEPHEN J. FIELD, Chief Justice, concurring), said: "We think the relief asked was properly refused. The defendant was sued as a wrongdoer, and, as between him and the plaintiff, the judgment for the value of the property must be regarded as standing in the place of the property itself. He cannot be allowed to take advantage of his own wrong, and by an illegal act defeat the purpose of the statute. A different doctrine would operate a practical repeal of the exemption laws."

In Duff v. Wells, 7 Heisk. 17, Mrs. Wells (then Whitley) had a judgment against Duff. Subsequently, she brought suit against him by replevin for a cow. This cow "was entitled to the protection of the exemption laws." Mrs. Wells was cast in the cow case, judgment going against her and her spouse for the value of the cow with damages for its detention. Thereupon they moved the court to set-off her judgment against Duff's judgment for said value of the cow and damages. The court, *nisi*, did this, thus wiping one hand with the other, and Duff lost his cow but paid his judgment debt. In reversing the case the Supreme Court of

Tennessee held set-off could not be allowed, because: "A party by his tortious act, and with a purpose to defeat the exemption laws, might possess himself of his debtor's property, be sued therefor, allow judgment to go against him for damages for the value and detention of the property, and then upon motion satisfy such judgment by having it credited uopn the judgment in his favor against the party whose property he had converted; and thus defeat the policy of the law exempting, for the benefit of families, property from execution."

The question again came before the Supreme Court of Tennessee in Collier v. Murphy, 90 Tenn. 300. In that case plaintiff sued for wages as a laborer. Defendant armed himself with an assignment of a judgment against plaintiff and, relying on the statute of set-off, pleaded his assigned judgment in stoppage of plaintiff's claim. In reply plaintiff insisted the wages due him were exempt from execution, attachment or garnishment, *ergo*, that his debt was not subject to be set-off by a claim in no way springing out of his contract relation with defendant. Plaintiff's contention, disallowed below, was allowed on appeal, the court saying: "Exemption statutes are entitled to a liberal construction. The manifest purpose of the Legislature was to exempt this amount of wages from any kind of coercive process of the law. If such a demand cannot be reached by attachment or execution or garnishment, is it a claim subject to be set off by a claim or demand in no way springing out of the contract under which the wages were earned? We think the exemption laws cannot be defeated by such a construction of the statute concerning set-offs. . . . . While the language used in the Act of 1871, strictly construed, would protect such wages only from 'execution, attachment, or garnishment,' yet the whole spirit of the act is such

that we think this claim was not subject to any manner of legal seizure.''

In Collett v. Jones and Hall, 7 B. Mon. 586, the question came before the Supreme Court of Kentucky. In that case it was argued that though the debtor was entitled to specific property as exempt from seizure under execution, yet that the law contented itself with protecting his remedy for the recovery of that specific thing and not the remedy for general damages. In answering that contention it was well said: ''In exempting certain articles or species of property from execution, it prohibits a seizure of them by the creditor, and, expecting obedience, it leaves the consequences of the disobedience to be determined by the general principles of the law. Of these principles, one of the most important is that the mandate of the statute shall be enforced, and its authority maintained, by discountenancing every violation of its letter or spirit, and especially by withholding the aid of the law from giving effect to any such violation, and, in many cases, by affording a positive remedy for the redress of the injured party, and to deprive the wrongdoer of the fruits of his wrongful act. If a judgment creditor, seizing and appropriating the privileged property for the satisfaction of his debt, in violation of the statute, is entitled to a decree setting off the damages recovered for the seizure, against his debt, his illegal act is in effect sanctioned and legalized, the authority of the statute in the particular instance is prostrated, and a way opened for its successful violation in every case. Upon this principle the creditor would be absolutely secure in the appropriation of the privileged property to his debt, if he could succeed in placing it beyond the reach of a specific remedy. The statute imposes no peculiar duty or burthen on the debtor, and no restriction of his right or remedy, but gives unconditional exemption to certain property. And it is the province of the courts

to give to it such effect as nôt to allow, and much less to encourage, either a violation or evasion of its provisions."

In a like case, *Ex parte* Hunt and Tally, 62 Ala. l. c. 2, it was said: "Of what avail is the judgment, or the exemption to the debtor, if so soon as the judgment is obtained, it may be extinguished by the machinery of a set-off? He is deprived of the property, and of his constitutional and statutory rights, and the creditor, it may be, who set these at defiance, profits by his wrong. The judgment for the value of the property so far partakes of the character of the property as to connect itself with the right of exemption which was attached to the property. [Thompson on Homesteads, paragraphs 748, 892, 893.] The circuit court did not err in disallowing the set-off."

In Treat v. Wilson, 65 Kan. 729, it was attempted to set-off a judgment against a judgment for the value of the exempt property. In denying that right, it was said: "Can the defendant have his judgment set off against such judgment? Clearly not. It was shown that the span of horses taken on execution were exempt to plaintiff and could not have been seized on execution or on other legal process for the collection of plaintiff's debt when taken. The judgment recovered by plaintiff was for the value of this exempt property. The judgment so obtained stands in the place of the property and is exempt to plaintiff. As defendant could not have seized the horses exempt to plaintiff on execution issued for the enforcement of his judgment if they had remained unsold, because they were exempt, he cannot, by way of set-off in this action, or other legal proceeding, seize and apply the judgment obtained by plaintiff as the owner of such exempt property."

In Reynolds & Churchill v. Haines, 83 Ia. 342, it was contended that when personal property, exempt from execution, is destroyed by fire the avails of an in-

surance policy upon such property was not exempt. In disposing of that contention (the case calling for it) the court used language in point in the case at bar, thus: "The money due on the policy stands in the place of the property destroyed, and this must be true whether the money takes the place of the property by contract, or is acquired *in invitum* by proceedings against the owner. It is plain that a trespasser, by appropriating the property and converting it to his own use, cannot make it subject to the payment of the owner's debts by holding the value of the property the measure of the debtor's damages for the trespass, subject to garnishment by the creditors. If he could do this, it would be a convenient method to defeat the exemptions of the statute."

In Atkinson & Co. v. Pittman, 47 Ark. 464, it was held that a motion to set-off one judgment against another was only a substitute for an execution or garnishment and would not be allowed where one of the judgments was exempt. That court cited as authority Curlee v. Thomas, 74 N. C. 51, in which a like doctrine was announced and in which that court said: "The plaintiff can be in no better situation, and the defendants no worse, by this short-hand way of getting the benefits of an execution without its burdens. To give effect to such motions as this, would be, in many cases, to deny the benign protection of the Constitution."

That the letter of the statute on set-offs must give way to the spirit of the exemption statutes has also been held in Elder v. Frevert, 18 Nev. 446; Deering & Co. v. Ruffner, 32 Neb. 845; Millington v. Laurer, 89 Ia. 322; and in Stagg's Heirs v. Piland, 31 Tex. Civ. App. 245. (In one of the syllabi of this case it was said: "A judgment cannot be offset against a claim for the proceeds of exempt property wrongfully converted, as this would render the exemption laws ineffective.") [See, also, Craddock v. Goodwin, 54 Tex. 578.]

Many of the foregoing cases were decided on stat-utes of set-off and exemption in vital provisions similar to our own, so that it would seem the decisions of the Kansas City Court of Appeals, now overruled, do not stand alone upon Indiana cases based on mere equita-ble doctrines, in the absence of a statute of set-off.

A case in the St. Louis Court of Appeals, Bauer v. Teasdale, 25 Mo. App. 25, is in point. In that case one Warner (a brother-in-law of Teasdale) had a judgment against Bauer. Teasdale bought it for a song to use as an offset against Bauer's claim to accrue for mak-ing a book-case for Teasdale. His attempt to use it as an offset was denied below and Teasdale appealed. THOMPSON, J., speaking for LEWIS, P. J., and ROM-BAUER, J., said: "It [the purchase of the judgment] was merely a device to collect Warner's judgment from the plaintiff by depriving the plaintiff of the benefit of the statute [of exemptions]. The justice, and after him the circuit court, held that this device ought not to suc-ceed and we are of the same opinion. The statute, which exempts a certain amount of personal property, or money in lieu of other personalty, in the hands of poor debtors, has always been liberally construed in this State, for the purpose of effecting the intention of the Legislature, which is consonant with a sound and humane public policy. The statute would be of little value, if it could be evaded in this way. A month's wages of a laborer are exempt from execution under a statute of this State; but if such a device as the defend-ant has here resorted to, should be allowed to succeed, every corporation, or other proprietor employing la-borers, would be upheld in buying claims against them at a discount and in setting them off at the end of the month against their wages, thereby allowing their fam-ilies to starve. . . . . It is true that the statute [citing it] in terms exempts certain personal property *'from attachment and execution,'* and makes no refer-

ence to the case of a set-off or counterclaim. But the judgment of a court allowing a set-off or a counterclaim has merely the effect of applying the plaintiff's demand, or a portion of it, to the payment of the defendant's demand against the plaintiff, *and is hence in substance a mode of execution,* and as we are not to stand upon the letter of the statute, but are to construe and administer it according to its meaning and purpose, we are clear that the defendant's second counterclaim was rightly disallowed.''

. There is a new remedial statute known as the Attorneys' Lien Act (Laws 1901, p. 46). That law vitally affects judgments. Under given circumstances it gives an attorney an interest in the judgment, though this interest is the creature of the law and is not spread of record in the first instance. Now, if the dry letter of the set-off statute is to be *mechanically* applied, what becomes of the attorney's lien? May it be gouged into and carved up because the courts are powerless to protect it? An answer to that question may be found by considering the broad judicial treatment of that remedial statute, which in terms creates a right but is silent on the remedy to enforce the right. When the courts discovered that the statute gave no remedy, were they baffled in finding adequate ones? Not at all— they levied tribute here, there and yon. They drew their remedy from the fertile womb of the common law, from analogy, and in some instances from the doctrines of equity. [Wait v. Railroad, 204 Mo. 491.] So, the law in its wisdom for high reasons of state creates homestead and exemption rights in its citizens. As nature abhors a vacuum, so the State abhors paupers. These rights are a perennial fountain of good. The exercise of them wrongs no man because one man deals with another knowing there is an impassable obstacle in the road of stripping to nakedness his debtor. The statute of exemptions provides for stopping an execu-

tion or attachment levy and seizure of exempt property. Ordinarily, that is remedy enough. But if it prove inadequate because the creditor does not follow the path leading to an execution or attachment seizure, but hews out a path of his own to arrive at the same end, may the law not use astuteness to thwart the cunning of those who so violate its spirit? To my mind there ought to be but one answer to that question. To my mind Caldwell's judgment for the value of his mules stood for the mules and it makes no difference how these mules were seized. They could not be seized at all, neither by execution or by attachment, on the one hand, or by (what amounts to the same thing in the end) set-off or conversion, on the other.

But enough has been said. The decisions of the Kansas City Court of Appeals referred to are sound law. They give a reasonable, a practical and equitable construction to the law of set-off and the law of exemption. They follow the great body of judicial utterance and construction elsewhere, and therefore should be praised—not blamed, buttressed—not overthrown.

There is a section of the set-off act which gives ample authority for a motion to set-off one judgment against another in court. It was not the theory of that statute that the matter should be thrown into the hands of the sheriff alone and be only adjusted by him on mutual executions. Section 4495, Revised Statutes 1899, reads: ''Whenever any circuit court shall render final judgment in causes in which the parties shall be reversed, and shall sue and be sued in the same right and capacity, such court may, whether such judgment be rendered in the same court or not, if required by either party, set off such judgment the one against the other, and issue execution in favor of the party to whom the balance may be due, and credit such execution with the amount of such set-off.''

Under the authority of the foregoing section, it is not left alone to sheriffs to act, the courts themselves

take a hand in setting off one judgment against another, and when they are called upon to do so in a given case it is their duty to so read the set-off law as not to dim, lop off or destroy the exemption law but administer them both so as to do even and full justice. It has been held that replevin suits are so flexible as to protect and adjust the equities between litigants. Why, then, is it that in administering the statute of set-off, the cold, naked, rigid letter of the statute must be followed, and the eternal principles of right between man and man lost sight of?

What say the maxims? *Summum jus, summa injuria, i. e.,* rigid law is the greatest injustice—or too strict interpretation of the law is frequently productive of the greatest injustice. *Apices juris non sunt jus, i. e.,* the extremity of justice is injustice, or, as liberally construed by a scholar, "right too rigid hardens into wrong."

As put by THAYER, J. (Life Ins. Co. v. Roth, 122 Fed. 1. c. 858): "For the purpose of ascertaining the intention of the lawmaker, a court is not confined exclusively to the language of the act, although its language must be given due weight, but should consider as well the circumstances which led to its adoption, and the evil that it was designed to remedy. When this is done, it is competent for a court to declare that a thing which may be within the letter of a statute is not governed by the statute, because it is neither within its spirit, nor within the intention of the lawmaker."

It would but overload the case to cite our own numerous decisions to the same effect. The judgment of the circuit court was right. It preserved Caldwell's exempt mules, transmuted into a money judgment, because of Ryan's wrongful act, as beyond reach of any judicial seizure to pay Ryan's debt, and that is the spirit of the law.

Accordingly the judgment should be affirmed.

*Graves, J.,* concurs.