# PASCAL W. OLDHAM et al., Appellants, v. HARVEY E. WADE et al., Appellants.

### In Banc, February 2, 1918.

1. **FRAUDULENT CONVEYANCE: Wife to Husband: Solvency.** The term solvency, in its application to dealings between husband and wife, in which she attempted to convey to him all her property which might have been reached by execution under plaintiff's judgment against her, implies her then ability to pay all her debts out of her estate and also such condition of her property that it may be reached and subjected by process of law, without her consent, to the payment of her debts.

2. ————: ————: **Insolvency.** A deed from a wife, a judgment debtor, to her husband, by which she attempted to convey to him $5600 worth of real estate, for $1200 in cash and his note for $2700, and by which she was left legally insolvent, was fraudulent, for it was a joint attempt to render her legally insolvent, by placing her said real estate, liable to execution on the day of said pretended sale, beyond the reach of her creditors.

3. ————: ————: **Estoppel.** The indorsement by the judgment creditor of the note given by the husband to his wife in payment for her land, first indorsed to him by the husband and then indorsed by said creditor to the wife, as a mere conduit, without any knowledge on the creditor's part that the husband was having the note indorsed to his wife as part payment for her land, did not estop said creditor to pursue the land as having been conveyed by the wife to her husband to defeat the payment of the judgment.

4. ————: **Sheriff's Deed: Regular on Face.** A sheriff's deed, executed to the purchaser at the execution sale made in pursuance to a valid judgment and levy, which affirmatively recites all necessary facts in respect to the levy as well as other matters, and read in evidence without objection, will not be held to be void or voidable.

5. ————: **Res Adjudicata: Innocent Purchaser: Separate Transactions.** The purchase by a husband from his wife of lots in Kansas City, and a purchase two years later of land in Pettis County of land which she had then inherited but did not own at the time the lots were purchased, were not a single transaction, but separate and distinct deals; and a holding by the circuit court of Jackson County that the husband was an innocent purchaser for value of the lots, without notice that the purchase money was unpaid, was not *res adjudicata* in respect to the purchase of the land in Pettis County.

6. ———: **Selling Land Under Execution Before Fraud Is Established.**
The holder of a judgment may sue out execution, have it levied
on the debtor's land (other than his homestead), have the sheriff
sell the same, buy it in for a small sum, and then bring suit in
equity to have a prior conveyance of the debtor set aside as made
in fraud of his creditors. While this method of procedure has
often been criticised by the Supreme Court as harsh and unfair to
the debtor, and as encouraging speculation in litigation by the
creditor, its legality has uniformly been upheld; and if this
method of procedure is to be declared illegal, it must be done by
the Legislature, and not by judicial construction.

7. ———: ———: **Lien on Land Sold: Inadequacy of Consideration.**
The judgment debtor, who has been endeavoring to defeat her
creditor in the collection of his judgment ever since its rendition
and who announced at the execution sale that the purchaser would
acquire no title, is in no position to urge that the sale should be
set aside for inadequacy of consideration. The creditor, who
caused the land to be sold under his judgment, and having re-
ceived a sheriff's deed brought suit to have a prior conveyance
made by the debtor to her husband set aside as made in fraud
of her creditors, is entitled, having established the fraud, to the
land itself, and not merely to a lien on the land, although the
land was worth $5,000 and was sold to him for $100, and the
original judgment was for $748.20.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B.
Shain,* Judge.

Reversed and remanded *(with directions).*

*Charles E. Yeater* for plaintiffs.

(1) The sheriff in his deeds recites due levy and
advertisement and in any case of a sheriff's sale of
land under execution the return of the sheriff cuts no
figure whatever, and it is not necessary to the validity
of the purchase that he make a correct return or any
return whatever, and the omission of the sheriff in his
return on the execution to describe in detail the prop-
erty levied on, or a return contradictory of his deed,
does not affect the validity of his deed aforesaid or the
title of plaintiffs thereunder. Simmons v. Affolter,
254 Mo. 173; Bray v. Marshall, 75 Mo. 329; Buchanan v.
Tracy, 45 Mo. 438. (2) Mere inadequacy of price alone,

except in rare cases, will not vitiate an execution sale, but even if such inadequacy alone raises a presumption of fraud, that presumption is rebutted here where the inadequacy was due to the fraudulent conveyance by defendants to defeat creditors of the property sold, and was further due to the fact that the attorney for defendants was present when the sheriff's sale was cried and warned all bidders that Mr. Wade and not the execution creditor owned the land. Mangold v. Bacon, 229 Mo. 479; Martin v. Castle, 193 Mo. 184; Knoop v. Kelsey, 121 Mo. 649; Mangold v. Bacon, 237 Mo. 520; Bradshaw v. Halpin, 180 Mo. 672; Rinehart v. Long, 95 Mo. 401. (3) The plaintiffs agreed that the trial court, after declaring the conveyance from Mrs. Wade to her husband of her share in her father's land and the subsequent deed to Foster were fraudulent and void, and after denying defendants' claim that the sheriff's deed was invalid, erred in setting aside such deed because plaintiffs did not attack the fraudulent transfer in equity first and because of inadequacy in the bid, but further contend that the judgment should have annulled such fraudulent conveyances and vested title in the plaintiffs. Garrett v. Wagner, 125 Mo. 463; Welch v. Mann, 193 Mo. 326; Ryland v. Callison, 54 Mo. 513; Zoll v. Soper, 75 Mo. 461. (4) Since defendants admit the land was worth from $4500 to $5000 and the lots $600 and that they were exchanged for a $2700 note and $1200 paid in small amounts during a period of several years, which was from $1200 to $1700 less than the land was worth and enough to largely pay plaintiffs' judgment, the law subjects such excess to a trust for the use of creditors for whose benefit a lien can be declared on the land in such cases as this, and so it was expressly ruled in Bank v. Winn, 132 Mo. 89. (5) The court did not err in setting aside the deeds in question as fraudulent to creditors. (6) The question whether Mr. Wade knew that the purchase price of lots had been paid was not *res adjudicata* at the trial in Jackson County, because the record of the judgment entry shows that the plaintiffs took a

nonsuit without leave as to him, after a declaration of law by the court sitting as a jury, and dismissed the second count of their petition so as to enable them to raise the issue in a subsequent suit. Sec. 1980, R. S. 1909; Wood v. Nortman, 85 Mo. 304; McClure v. Campbell, 148 Mo. 112; Weithaupt v. St. Louis, 158 Mo. 659; Carter v. O'Neil, 102 Mo. App. 391. Mr. Wade is privy in estate to Mrs. Wade and is bound by the judgment in the Jackson County suit. Cooley v. Warren, 53 Mo. 166; State ex rel. v. St. Louis, 145 Mo. 552; Carthage ex rel. v. Wessner, 116 Mo. App. 121; Crispen v. Hanavan, 50 Mo. 418; Young v. Byrd, 124 Mo. 590. (7) Courts scrutinize closely and with suspicion conveyances between husband and wife where creditors are concerned. Cole v. Cole, 231 Mo. 255; Ice Co. v. Kuhlman, 238 Mo. 697; Benne v. Schnecko, 100 Mo. 257; Gruner v. Scholz, 154 Mo. 415; Bank v. Fry, 216 Mo. 45. A clear sweep of all of grantor's property raises a presumption of fraud, particularly in this case, where a wife conveys all her visible real property to her husband in exchange for invisible property. Gordon v. Ritenour, 87 Mo. 60; Segers Sons v. Thomas Bros., 107 Mo. 635. Every person is presumed to intend the necessary consequences of his acts, and if they necessarily delay, hinder or defraud creditors then the law presumes they were done with a fraudulent intent; but in this case where the husband and wife knew of the latter's indebtedness, and the wife conveyed all her visible landed property to her husband for alleged invisible property, namely a note for $2700 and $1200 cash, which latter both admit was not paid at the time nor all of it paid for several years, some of it not being paid until after this suit was filed, and the wife thinking some of it still unpaid at the trial, the presumption of fraud is conclusive. Bank v. Buck, 123 Mo. 154; Tootle & Co. v. Lysaght & Co., 65 Mo. App. 142. Mrs. Wade was a judgment debtor and her intent was to hasten to convey the Pettis County land out of her name for fear plaintiffs would discover and levy on it, which she did two months and twelve days after she inherited it

from her father, and her husband knew of that fact and although he may have paid full value for the land such knowledge of his wife's intent renders the transfer fraudulent and void as to creditors. Sexton v. Anderson, 95 Mo. 379; Gust v. Hoppe, 201 Mo. 300; Kurtz v. Troll, 175 Mo. 506. Mrs. Wade's admission that the cash part of the consideration was not paid for years, some of it after this case was begun, and some still unpaid in her judgment at the trial of this case, renders the transfer fraudulent and void to plaintiffs as judgment creditors. Dougherty v. Cooper, 77 Mo. 532; Kurtz v. Troll, 175 Mo. 511. At the least Mr. Wade knew enough of his wife's circumstances to put him on inquiry when he knew she was making a clean sweep of all her visible property in exchange for invisible property of less value, and inquiry would have disclosed her object if he did not know it, and his failure to make inquiry charges him with notice of the fraud. Rupe v. Alkire, 77 Mo. 641; Roan v. Winn, 93 Mo. 511; Leavitt v. La Force, 71 Mo. 356; Bank ex rel. v. Purcell, 131 Mo. 317; Adams v. Gossom, 228 Mo. 583.

*A. W. Gray* and *G. W. Barnett* for defendants.

(1) The deed from the sheriff of Pettis County to the land in question, and under which plaintiffs claim title, is absolutely void and conveys no title to plaintiffs for the reason that there was no levy on the land in question under the execution issued from the circuit court of Jackson County. The return of the sheriff on the execution under which the sale to plaintiffs was made does not show that this or any other land was seized or levied upon; no property is described. While a levy may be made without the officer going upon the land, yet a description of the land seized must be indorsed on the writ by the officer, showing what land has been seized and appropriated for the debt. Duncan v. Matney, 29 Mo. 368; 17 Cyc. 1092. The return must describe the land with as much certainty as a deed.

Henry v. Mitchell, 32 Mo. 512. The judgment being in another county, was not a lien on the land in Pettis County, and hence the validity of the sale depends upon a valid levy. Sec. 2124, R. S. 1909. But plaintiffs, recognizing that the return did not show a proper levy upon the land, sought to cure this by asking leave to amend the return on the trial in the Pettis County Court. Whether the trial court did or did not permit the amendment is not quite clear, but it is immaterial whether the court permitted an amendment or not, as the trial court in this case had no jurisdiction over the execution which was issued from the Jackson County Circuit Court. If the amendment could be allowed at all, it could only be done by permission of the Jackson County Circuit Court, from which the execution issued. Sec. 1861, R. S. 1909; Bunton v. Adams, 65 Mo. App. 6; State ex rel. v. Rayburn, 22 Mo. App. 303. (2) The plaintiffs acquired no title under the sheriff's deed for the further reason that the price paid, one hundred dollars, for a farm worth about forty-five hundred dollars, was so inadequate as to outrage the conscience and shock the moral sense. This alone is sufficient ground for setting aside the sale and declaring that the plaintiffs had no title thereunder. Mangold v. Bacon, 237 Mo. 496; Guinn v. Donnell, 201 Mo. 173. The court therefore did not err in setting aside the deed to plaintiffs, but did err in charging the defendant Harvey E. Wade's land with the judgment and costs rendered in the circuit court of Jackson County against defendant Lucile Wade, for the reason that this is not a suit to collect this judgment, but is to recover the land, based upon an alleged valid title. Neither party asked the relief granted by the trial court, and both parties are repudiating any such relief. The plaintiffs do not ask a lien on said land for their judgment, and are appealing from the judgment of the lower court in granting such relief. Defendant Wade does not ask any such relief, but this is a suit where both parties are claiming title to the land, and it is a suit for the land and not for the money. (3) In a case of this kind,

the plaintiffs must recover the land or nothing. They cannot recover on their Jackson County judgment in this form of action, and have it declared a lien on the land. Garrett v. Wagner, 125 Mo. 450. (4) While it is true that when a court of equity once acquires jurisdiction for any purpose, it will retain such jurisdiction for the purpose of doing complete justice, yet the relief granted must be authorized by the pleadings. 16 Cyc. 107; Waldron v. Harvey, 54 W. Va. 608. The court cannot decree against the defendants and at the same time dismiss plaintiff's bill. Scofield v. Peck, 182 Mass. 121. That in effect is what the court has done in this case. The plaintiff cannot recover on a ground foreign to the bill. McKnight v. Bright, 2 Mo. 110. (5) The court erred in setting aside the deed to defendant Harvey E. Wade under which he acquired title to the Pettis County land. Under the undisputed testimony he was an innocent purchaser for value; before Mrs. Wade was sued in the circuit court of Jackson County, on the note on which the judgment was rendered against her, defendant Harvey E. Wade had contracted for the land in question, and had paid the purchase price, being twelve hundred dollars in cash and the assignment of a twenty-seven-hundred-dollar note secured by a mortgage, to Mrs. Wade. At the time he paid the purchase price he had no knowledge of any debt owing to the plaintiff from his wife. Mr. Wade testified to this, Mrs. Wade testified to this, and the plantiff, Oldham, on two different occasions, namely, in his deposition and at the trial in the Jackson County Circuit Court, testified that the defendant, Harvey E. Wade, knew nothing about this indebtedness. Therefore, we say that the uncontradicted evidence is that the defendant, Harvey E. Wade, was an innocent purchaser for value of this land, and the court erred in setting aside the deed to him and in charging the land with a judgment obtained against his wife. (6) Even if the sale from Mrs. Wade to her husband were fraudulent, the plaintiff was a party to the fraudulent transaction. The evidence

clearly and conclusively shows that when Mr. Oldham took the note which he says he took for the purchase price of the lots in Kansas City, he agreed to keep secret from Mr. Wade the fact that the lots were not paid for, because Mrs. Wade did not want her husband to know that they were not paid for, and upon the evidence of plaintiff himself it is conclusively proved by his own testimony, repeated on two different occasions, that Mr. Wade knew nothing of the claim against his wife for the unpaid purchase price of the lots until long after the suit was brought in Kansas City on the note, and that plaintiff agreed to say nothing about the lots not being paid for. He thus, by his own acts, enabled Mrs. Wade to dispose of the property so that the purchaser would be an innocent purchaser; and he further agreed to take her note and waive any lien upon the property for the purchase price, and this waiver and estoppel goes as to all property that Mrs. Wade might have. This general waiver would apply to all transfers. Nixon v. Ins. Co., 68 Mo. App. 251. (7) Further, the evidence shows that this Pettis County land was partly paid for by a twenty-seven-hundred-dollar note transferred from Mr. Wade to Mrs. Wade, and the plaintiff assisted in bringing about this transaction; that the note was indorsed to Oldham and by him indorsed to Mrs. Wade, for the purpose of changing the title to the twenty-seven-hundred-dollar note, and that the plaintiff knew the purpose for which the title to this note was being transferred from Harvey E. Wade, to his wife, Mrs. Lucile Wade, and that he, Oldham, acted as the conduit through which it passed, and for this reason he is estopped from complaining of the sale. (8) The question is res adjudicata as to whether Mr. Wade knew that the purchase price for the Kansas City lots, for which the note was given, had been paid, at the time he bought the lots, as that was the issue in the case at Kansas City, in the Jackson County Circuit Court, when it was attempted to enforce a lien against these lots in the hands of Mr. Wade.

RAILEY, C.—The petition in this case was lost from the files, but it is agreed that its allegations duly set forth facts, charging that Lucile Wade fraudulently disposed of certain land lying in Pettis County, Missouri, and described in the petition, to her husband, Harvey E. Wade, by means of a deed first made by the Wades to Roy Underwood, who afterwards conveyed the property to defendant Harvey E. Wade, who afterwards conveyed the same to Foster, who incumbered the same with a fraudulent mortgage for four thousand dollars, securing a note for that sum to defendant Wade, in which said mortgage or deed of trust George Barnett, Jr., was trustee. The petition also charged that plaintiffs were judgment creditors of defendant Lucile Wade; that after said fraudulent conveyance, the sheriff of Pettis County aforesaid levied upon said real estate and sold the same to plaintiffs under an execution. The petition prayed that all the title to said real estate in defendants be divested from them and invested in plaintiffs; and also prayed for a decree to quiet title against the claims of defendants.

The answer contains a general denial, except in respect to those matters admitted to be true. It admits the conveyances described in the petition, denies they were fraudulent, and alleges other defenses which will be considered hereafter.

The answer charges that the sale under execution to plaintiffs was fraudulent; that the Pettis land was worth $4500 and plaintiffs only paid $100 for same; that said execution sale was void, etc. They ask to have the sheriff's deed to plaintiffs set aside and cancelled, and that defendant H. E. Wade be decreed the owner of said land, etc.

The reply is a general denial of the new matter in the answer.

The trial court found that Mrs. Wade was the owner in fee of the real estate in controversy, subject to an equity lien for the full amount of plaintiffs' judgment and costs.

Cross-appeals were taken by both plaintiffs and defendants.

This case presents some complex questions, which are difficult of proper solution. If, upon an examination of the record we should find that it is free from fraud **Fraudulent Conveyance.** upon the part of defendants, our conclusion as to the disposition of the case would not be attended with any difficulty, but on the other hand, if we should conclude, that the charges of fraud lodged by plaintiffs in the *complaint* are well founded, and sustained by the evidence, the question, as to *how* a court of equity, *on the record before us,* should frame its decree based upon such facts, is not so easy of solution.

I. Have the plaintiffs, by the evidence, sustained the charges of fraud made against defendants in regard to the disposition of the Pettis County land? **Wife's Conveyance to Husband.** It may not be deemed inappropriate, at the outset, to state some general principles of law, applicable to this class of cases. Section 2881, Revised Statutes 1909, which is the same as Section 3398, Revised Statutes 1899, reads as follows:

"Every conveyance . . . of any estate or interest in lands . . . made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands . . . shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void.

Section 2886, Revised Statutes 1909, provides that:

"This article shall not extend to any estate or interest in any lands . . . which shall be upon valuable consideration, and bona-fide and lawfully conveyed; nor shall it be construed to avoid any deed, as against any subsequent bona-fide purchaser from the grantee for valuable consideration, and without any notice of fraud."

In construing the provisions of above statute, in the leading case of Burgert v. Borchert, 59 Mo. l. c. 83-4,

Judge SHERWOOD, very forcefully announces the following principles of law, applicable thereto:

"While it is undoubtedly true as a general legal proposition that 'fraud is not to be presumed, but must be proved by the party alleging it,' yet it is equally true, that fraud is seldom capable of direct proof, but for the most part has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of a fraudulent design."

Since the enactment of Section 8304, Revised Statutes 1909, known as the Married Woman's Act of 1889, husband and wife have had the legal right to deal with each other in buying and selling land, as though she were a *feme sole,* where the conveyance is made in good faith and without fraud. But, as we recently announced, in the case of Barrett v. Foote, 187 S. W. l. c. 70:

"In dealings between father and son, as between husband and wife, where the rights of creditors are involved, their acts should be closely scrutinized. [Bank v. Fry, 216 Mo. l. c. 45, 115 S. W. 439; Cole v. Cole, 231 Mo. 236, 132 S. W. 734; Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. l. c. 697, 698, 142 S. W. 253.]"

In regard to the question of the debtor's solvency, in considering cases of this character, we stated the law clearly in Eddy v. Baldwin, 32 Mo. l. c. 374, as follows:

"The law is practical and looks to the attainment of practical results; and a solvency which it cannot employ in the payment of the debt of an unwilling debtor, is certainly not distinguishable by any valuable difference from insolvency. The term *solvency* in its application to cases like this, implies as well the present ability of the debtor to pay out of his estate all of his debts, as also such attitude of his property as that it may be reached and subjected by process of law, without his consent, to the payment of such debts."

273 Mo.—16

The above principle of law is sustained by many subsequent decisions of this court, which will be found collated in Barrett v. Foote, 187 S. W. l. c. 69. It is well to remember this principle of law, in construing the result of the dealings between defendant Wade and his wife, in which she attempted to convey to her husband all her property which might have been reached on execution under plaintiffs' judgment against her. Other important principles of law, applicable to the case, will be referred to and considered later. Keeping in mind the above principles of jurisprudence, we will turn to the evidence and consider the charges of fraud made against defendants.

The plaintiffs were owners of Lots 43 and 44 of Oldham's Addition to Kansas City, Missouri; and on January 28, 1905, sold to Mrs. Wade the above lots for $600, and took her note for said amount, due on or before two years from said date. Her husband was then absent from the State. No mortgage or deed of trust was taken to secure said note, nor was any vendor's lien reserved. The lots were conveyed to Mrs. Wade by deed, dated January 28, 1905. On June 14, 1905, Wade and wife conveyed said lots to Mrs. Randall, and the latter, on the same day, conveyed the same to Mr. Wade. Mrs. Randall paid no consideration for the lots, but was simply the conduit for transferring the title from Mrs. Wade to her husband.

Mr. Wade testified that he returned from South America about the 13th or 14th of February, 1905; that his wife told him about having bought the lots; that he brought with him $800 in currency, which was placed in the bureau drawer; that he owed his wife $800 for money formerly borrowed from her. He says that shortly after his return home, Pascal W. Oldham came to his house to collect the $600 for the lots, and that his wife took $600 of the money in the bureau drawer to pay Oldham. She was afterwards sued upon the above note and a personal judgment rendered against her on March 10, 1909, for $748.20.

Defendants, in their brief, in speaking of said suit, say: "The suit against Mrs. Wade in Jackson County was filed on July 16, 1907, and on July 20th, four days thereafter, Mr. Wade purchased this land from his wife."

The land referred to is the real estate now in controversy.

The writ of summons in the above suit was dated July 16, 1907. We are satisfied from the testimony that both Mr. and Mrs. Wade, when the suit was brought against her in Jackson County, Missouri, on July 16, 1907, knew before she attempted to sell the land in controversy to her husband on July 20, 1907, that Mrs. Wade was being sued on the $600 note. After the above suit was brought, Wade was joined as a co-defendant and a vendor's lien sought against said lots. He claimed to be an innocent purchaser of said lots, for value, and without notice that his wife was indebted to plaintiffs for same. The trial court sustained his contention, the cause was dismissed as to him, and a personal judgment rendered against his wife, as aforesaid. The question as to whether Mr. Wade was an innocent purchaser for value *of the land in controversy*, was not an issue in the Jackson County litigation.

Let us return to the 20th of July, 1907, when Mr. Wade claims to have purchased from his wife the land involved herein, and ascertain how matters then stood.

H. E. Wade was not only the husband of Lucile Wade, but the latter largely depended upon him for advice in regard to business matters. She testified upon this subject, as follows:

"I don't know whether I could very intelligently explain to the court about my sale of these two Kansas City lots to Mr. Wade, and also this Pettis County land and about what I received in exchange for them, or not. *I know so little about it, and I left those things principally to him, to Mr. Wade, and I have always kinda relied on his judgment in everything.*" (Italics ours.)

After the Jackson County suit was commenced against Mrs. Wade. on July 16, 1907, it is evident that both the Wades realized, if judgment went against the wife, her interest in her father's estate in Pettis County, including the land in controversy, would be liable under execution for the payment of plaintiffs' demand, should judgment be rendered thereon. We are satisfied from all the facts in the case, that they then conceived the idea of placing the property in controversy beyond the reach of plaintiffs, as creditors, and, hence, pursued the course of having it conveyed to her husband, in order that he might have the title vested in. the name of an innocent purchaser, if possible.

It was admitted at the trial, that D. W. Hainline— the father of Mrs. Wade—was the owner of the land in controversy, and that he died on the *8th day of May, 1907*. The property of Hainline was partitioned and the land in litigation here became the property of Mrs. Wade. Both Wade and his wife, as soon as plaintiffs sued, moved promptly, and within four days, to place her interest in said land, in the name of some other person, to avoid the payment of a prospective judgment, should one be rendered against her.

The Wades both claim that the husband owed the wife $800 for borrowed money. The husband testified, that: *"A fair market value of this land at the time I bought it was five thousand dollars."* That is to say, he owed his wife $800 and got land from her of the market value of $5000, making the total value of the assets of the wife, before the sale to the husband, $5800. Her interest in the *land* could be levied on and sold under execution. She and her husband by the deal aforesaid, attempted to render her legally *insolvent,* so that none of her property could be subjected to plaintiffs' demands. Both the Wades claim that the husband was to pay $1200 in cash and the $2700 note, making $3900, for the lots, worth $600, and the land in controversy, worth $5000. In other words, they attempted to place her $5600 worth of real estate beyond the reach of her creditors, and to pay her in personal

property, which they claim was worth $3900, therefor. If the sale from the wife to the husband, of the land in controversy, should stand, it would leave the wife legally *insolvent*, although she had *real estate* liable to execution worth $5000, the day of said alleged sale.

The defendants failed to produce the $4000 note which Wade claimed to have taken from Foster in 1910. They failed to produce the $2700 note, although notified to have the same at the trial. They produced no checks, showing *when* any part of the $1200, or the $2700 note were paid, if at all. The husband testified on this subject, as follows:

"Q. How would you pay her this money? (Speaking of his wife) A. I would give her a check for a certain amount of money for a certain amount, twenty-five dollars or fifty dollars at a time. I never paid her the twelve hundred dollars at one time; it was paid in twenty-five, fifty or a hundred dollars, in installments, as she wanted it; when she wanted it and I had it; and I would take credit on the note."

He said he could not tell what proportion of the $1200 he paid in cash, and what proportion in checks.

Mrs. Wade testified that out of the $2700 she paid a debt of $1100, but *refused* to give the name of the person to whom she claims to have paid the money. Mrs. Wade further testified as follows:

"The twelve hundred dollars that he gave me, he did not give it all to me personally in cash or checks. He sent part of it when he was away from home *He would keep up part of the household expenses.* I expect it is three years, maybe, before Mr. Wade completed the payment of that twelve hundred dollars after he commenced making monthly payments."

The testimony of the Wades is contradictory, indefinite and uncertain. The overwhelming evidence in the record convicts them of clean cut fraud. We are of the opinion that Foster is a mere figure-head in this litigation, and came into the transactions long after the plaintiffs had acquired and recorded their deed from the sheriff, for the land in question. Plaintiffs'

deed was properly acknowledged and recorded on *December 29, 1909*. The deed to Foster, from the Wades, is dated *July 2, 1910*.

Without the slighest hesitation we have reached the conclusion, *that as to plaintiffs*, who are and were judgment creditors of defendant Lucile Wade, the conveyance from the latter and husband on July 20, 1907, to Roy Underwood, for the land in question; and the deed from Roy Underwood, to Harvey E. Wade, dated July 20, 1907, purporting to convey said land; and the deed from Wade and wife to Foster, dated July 2, 1910, conveying said real estate, as well as the deed of trust, executed by defendant Foster, to defendant Barnett, executed on the 2nd day of July, 1910, *are each and all utterly void and of no effect.*

II. The doctrine of estoppel, sought to be pleaded against plaintiffs, on account of Pascal M. Oldham having indorsed the $2700 note, is without merit. He was never the owner of said note, and if Mr. Wade indorsed the note to Oldham and had him, as a mere conduit, indorse the same to Mrs. Wade, it would not operate as an estoppel against plaintiffs in this case, for the obvious reason that it is neither claimed nor shown that Oldham had any knowledge that Wade was having this note indorsed to Mrs. Wade as part payment of her interest in her father's estate.

Estoppel.

At the instance of defendants, Pascal M. Oldham testified as follows:

"Mrs. Wade told me, when she gave me the note, she would get some money from her father's estate. She told me her father was still alive, and she would have an interest in his estate, and that she expected to pay me out of that. I did not know anything about what the estate was."

Defendants have signally failed to show that Oldham, when he indorsed the $2700 note to Mrs. Wade, had any notice, or information, that Wade was transferring to her said note, as part payment for her in-

Oldham v. Wade.

terest in her father's estate. This plea of estoppel is therefore without merit.

III. This brings us to the question as to whether the sheriff's deed or deeds to plaintiffs for the land in controversy are void or voidable. Defendants contend, that the return of the sheriff, on the Jackson County execution, under which said land was sold to plaintiffs, does not show that any land was seized or levied upon.

**Sheriff's Deed.**

In the reply brief of defendants, it is said: "We concede that an abstract of levy by the sheriff of Pettis County, Missouri, was filed for record in the recorder's office in Pettis County, prior to the sheriff's sale and sheriff's deed."

This was through oversight omitted from the abstract. Both the deeds, executed to plaintiffs, for the land in controversy, under said execution sale, affirmatively recite all the necessary facts, in respect to the levy, as well as all other matters, and were read in evidence without objection.

Under the former rulings of this court, the above contention is not well founded. [Simmons v. Affolter and Cowan, 254 Mo. l. c. 173-4; Bray v. Marshall, 75 Mo. l. c. 329; Buchanan v. Tracy, 45 Mo. l. c. 438-9.]

IV. Defendants insist that, because the circuit court of Jackson County found that Mr. Wade was an innocent purchaser for value of the two Kansas City lots and purchased the same from his wife without notice that the purchase money was unpaid, the foregoing was *res adjudicata* in respect to the purchase of the land in question, as, they claim, the purchase of the two lots and real estate in controversy was a single transaction. When Mrs. Wade bought the lots in *January, 1905,* and conveyed the same through Mrs. Randall to her husband in June, 1905, D. W. Hainline was still alive, and did not die until *May 8, 1907.* Mrs. Wade had no interest in her father's estate to sell in *1905.* We are further satisfied

**Res Adjudicata.**

from the evidence that these were *separate and distinct deals,* both of which were managed by H. E. Wade. He got possession of the lots and beat the plaintiffs out of their vendor's lien, and attempted to take over his wife's interest in the Pettis County land, to defeat the plaintiffs in the collection of their demand, should judgment go in their favor.

This contention is likewise without merit.

V.   Defendants, in their brief, assert that: "In a case of this kind, the plaintiffs must recover the land or nothing.   They cannot recover on **Method of** their Jackson County judgment in this **Procedure.** form of action, and have it declared a lien on the land."

On the other hand, the plaintiffs claim they are entitled to the land in controversy, because the proceedings which they inaugurated, in uncovering the fraud of defendants, and asking to have them divested of the title to said land and the same vested in the plaintiffs, are in full accord with the former rules of procedure in this State.

The statutes heretofore quoted in respect to fraudulent conveyances have been in existence in this State for more than seventy years.   During that period, commencing with 1856, numerous cases have come to this court, in which the judgment creditor pursued the same course as did the plaintiffs in this action.   That is too say, he obtained his judgment, sued out execution, levied on the debtor's property, sold the same, bought it in for a *small* sum, and then brought suit in equity to set aside the fraudulent conveyances, and to divest the fraudulent grantee of the title, etc.   While this method of procedure was sometimes criticised by this court as being harsh and unfair to the debtor, its legality has been recognized up to the most recent utterances of this court, and yet the Legislature permitted the above statutes, thus construed, to remain in full force and effect during all that period, without undertaking to modify the same or to regulate the proceedings there-

under for the benefit of fraudulent grantors. If the statutes and proceedings thereunder operate to the disadvantage of fraudulent grantors, and a change in this respect is desired, relief must come through the General Assembly, and not by judicial construction. Among the many cases in this court sustaining the course pursued by plaintiffs here may be mentioned the following: Eddy v. Baldwin, 23 Mo. 588; Rankin v. Harper, 23 Mo. 579; Dunnica v. Coy, 24 Mo. 167; Bobb v. Woodward, 50 Mo. 95; Lionberger v. Baker, 88 Mo. 447; Rinehart v. Long, 95 Mo. 396; Slattery v. Jones, 96 Mo. 216; Eneberg v. Carter, 98 Mo. 647; Garrett v. Wagner, 125 Mo. 450; Halstead v. Mustion, 166 Mo. 488; Bradshaw v. Halpin, 180 Mo. 666.

In 1872, in the case of Bobb v. Woodward, supra, Judge BLISS, in discussing the questions under consideration, on pages 101-2, said:

"There is little doubt that the interest of both debtors and creditors would be better subserved if, in all these resulting trusts, the creditor were required to ascertain by judicial decision the actual interest of the debtor in the property, before offering it for sale. The charge of fraud presupposes a doubt whether any such trust exists; and if the property is sold before the doubt is solved, it necessarily follows that the purchase is subject to all the uncertainty of a gambling adventure. All our observation shows that such interest are bid off at a nominal sum, and while the debtor is stripped, the creditor receives nothing. Yet, as the law exists, the creditor may at once proceed to sell the debtor's interest, leaving it to the purchaser to ascertain as he may what that interest is; or he may first, by a proceeding in equity, ascertain the existence or extent of the interest, and sell it when so ascertained. That the latter is the better course is no reason, however, why the former may not be pursued."

In 1885, Judge BLACK, in Lionberger v. Baker, 88 Mo. l. c. 455-6, said:

"Where a debtor conveys his land in fraud of creditors, the creditor may institute his suit to set aside the

fraudulent deed and subject the land to the payment of the debt by thus first ascertaining the interest of the debtor therein, or he may sell the land under execution before the ascertainment of the debtor's interest, and then set aside the fraudulent deed. The purchaser at the execution sale will occupy the same position as if he were the creditor. It is to be regretted that the former course is not more frequently pursued, and thereby avoid the sacrifice of property and speculation attending such execution sales, of which this case is no exception; but the right of the creditor to pursue either course is well established in this State. [Bobb v. Woodward, 50 Mo. 95; Ryland v. Callison, 54 Mo. 513; Zoll v. Soper, 75 Mo. 460.]''

In Welch v. Mann, 193 Mo. l. c. 326, where it was not necessary to a decision of the case, it was said the judgment creditor had the legal right to pursue the course which plaintiffs did here. The author of the opinion, however, ventured to recommend the *modern practice,* under which, the creditor should first go into a court of equity and establish the fraud before levying upon and selling the fraudulent grantor's property. This opinion was promulgated in 1905, and still the Legislature saw fit to let the statute remain as it is.

In Spindle v. Hyde, 247 Mo. l. c. 52-3, Judge LAMM again criticised the course pursued by plaintiffs here, *but in express terms recognized their right to maintain this kind of an action.*

In the recent case of Barrett v. Foote, 187 S. W. l. c. 71, where plaintiff resorted to equity first, we said:

''The plaintiff did not levy upon and buy in said land, *as he could have done,* but is pursuing the course, commended by this court, of having the land in the hands of the son subjected to the payment of his demand.''

Since 1856, up to the present time, we have recognized the right of a judgment creditor to proceed as plaintiffs have done in this case, with a single exception.

In Woodard v. Mastin, 106 Mo. 1. c. 361, Judge THOMAS, in his opinion, conceded the law of this State to be as plaintiffs herein claim, and said by way of citation, that: "Inadequacy of consideration is no defense to a title obtained by plaintiff at a sheriff's sale, where this result was due to the efforts of the defendants to place their property beyond the reach of their creditors."

After thus stating the law, he proceeded, upon pages 361-2, as follows:

"Thus far we have had but little trouble in reaching conclusions, but the contemplation of the results to flow from a decree granting plaintiff all the relief he seeks gives us pause. The plaintiff bought the land at a public sale for $50, but we do not lose sight of the fact that, if he fails in this case, he loses all his debt, which now amounts to about $2500. He is entitled to some relief, but what? is the question. If we order the circuit court to set aside the fraudulent deeds, vest the title to the property in plaintiff and order an account taken of the rents and profits of the land since 1884, now seven years, plaintiff would probably get more than twenty times his debt, costs and expenses of this litigation. While the bill in this case seeks to set aside deeds and vest the title in plaintiff, we have come to the conclusion that we are not bound to grant relief in the exact form in which it is sought, but that we can fix conditions upon which we grant relief conformable to the facts alleged and proved."

The judgment, as modified, reads as follows:

"On plaintiff's motion, the judgment in this case is modified so as to direct the circuit court to take an account of the amount due plaintiff on his judgment, together with the costs of the original suit and this suit, including the costs of the sheriff's sale, to plaintiff, and also the amount of expenses to which plaintiff has been put in this case, including a reasonable attorney's fee and fees for printing the record, abstract and brief for this court, and for necessary time lost and traveling expenses in preparing for and attending the trial,

declare the total sum thus found a lien on the real estate in dispute, and order its sale for the payment of the same. All concur.''

When it is remembered, that the creditor frequently has but little left, after paying his counsel and other expenses, where he seeks to charge the property of the fraudulent grantor with the payment of his debt, the above judgment seems plausible, if the court had the legal right to enter it, as it made the creditor whole, but the same division of this court, in the later case of Garrett v. Wagner, 125 Mo. 1. c. 463-4, speaking through Judge SHERWOOD, in terms, overruled the above case, and so far as we are advised, no other court, except the one from which this appeal was taken, has attempted to follow the above ruling in Woodard v. Mastin, supra.

Upon a full consideration of this question, we are of the opinion that the course pursued by plaintiffs in this case is justified under our statute and the former rulings of this court. Unless the sheriff's deed to plaintiffs for the land in controversy should be set aside and cancelled upon some equitable ground not yet stated, the plaintiffs are entitled to a decree divesting defendants of the title to said land, vesting the same in plaintiffs, and declaring the latter to be the legal owners thereof.

VI. The defendants are asserting in this court *that plaintiffs are entitled to the land in controversy or nothing.* They appealed from a judgment giving the plaintiffs a lien on the land for their debt and costs. The plaintiffs are here insisting that, on account of defendants' fraud, they are entitled to said land and ask a decree accordingly. They appealed from a judgment giving them a lien on the land for their debt and costs. The only additional ground urged by defendants for sustaining their contention, and deciding the case adversely to plaintiffs, is based upon the fact that property worth $5000 was sold and bought in by them for $100.

We have found that defendants *fraudulently* attempted to place their property beyond the reach of their creditors. We learn from the record that their counsel at the sale under execution announced to those present that H. E. Wade owned the property in controversy, and that whoever purchased the same would buy it subject to his claim. They stand before us on the cold proposition that they were guilty of no fraud and that plaintiffs are not entitled to recover. Having failed in their defense on the merits of the controversy, they have no standing in a court of equity. The plaintiffs have pursued the remedy left open to them under the laws of this State successfully, and are entitled to a decree vesting in them the title to the land in litigation.

Judge LEONARD, in Rankin v. Harper, 23 Mo. 1. c. 586-7, said: "It ill-becomes the parties to the fraud, after they have been detected and foiled in their attempt, to complain of the sacrifice of property incident to such sales. These sacrifices are perhaps fully compensated for by their practical teachings, that, after all, 'honesty is the best policy.'"

In Rinehart v. Long, 95 Mo. 1. c. 401, Judge BLACK, in discussing this question in a case fraud was shown, and notice given at the sale that the debtor had no title to the property, said: "Inadequacy of consideration is no defense to this action, under such circumstances."

The case of Bradshaw v. Halpin, 180 Mo. 1. c. 672, was a proceeding similar to the one at bar. The debtor was found guilty of fraud. His property, worth $1250, was sold under execution, and the purchaser bought the same for $50. The latter sued in equity to set aside the fraudulent conveyances. Defendants insisted that the bill should be dismissed because of the inadequacy of the consideration.

In the case before us, the Wades acquired plaintiffs' two lots without paying for them. They have been endeavoring to defeat plaintiffs in the collection of their judgment ever since its rendition. They are in no position, after the fraud attempted to be perpetrated

on plaintiffs, and after announcing at the sale that the purchaser would acquire no title, to urge, at our hands, that the sale should be set aside for inadequacy of consideration.

VII.   Upon a full consideration of the whole case, we are of the opinion, that plaintiffs should be decreed to be the owners of the land in controversy.

We accordingly reverse and remand the cause to the circuit court of Pettis County, Missouri, with directions, to set aside and cancel the decree heretofore entered in this cause; to enter a new decree finding the issues in favor of plaintiffs, setting aside, as fraudulent, the conveyances of the real estate in· controversy, from Wade and wife to Underwood; from the latter to H. E. Wade; from the latter and wife to Foster, and the deed of trust from Foster to defendant Barnett.   Also in said decree to divest said defendants and each of them of all right, title and· interest in said real estate and to vest the title to same in the plaintiffs; also to decree the legal title to said land to be in plaintiffs; to enter in their behalf a judgment for the costs of this suit, and to grant said plaintiffs any other relief, which may be necessary to carry into effect this decree, not inconsistent with the views herein expressed.

**Decree.**

BROWN, C.—I concur in the result at which my brother Commissioner has arrived in the foregoing opinion.   I do not, however, understand it to hold that in cases in which the judgment creditor has become the purchaser of lands alleged to have been fraudulently conveyed by his debtor, and seeks in a court of equity a decree on that ground in aid of his legal title under the statute relating to fraudulent conveyances, the court may not impose such conditions as are fair and equitable in the particular case and fully accomplish the object of the Legislature.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of the Court in Banc.

All concur except *Bond* and *Faris, JJ.*, who dissent; *Bond, J.*, is of opinion the judgment of the lower court should be affirmed.