**Robert E. MADGET, Plaintiff-Respondent,**

**v.**

**Maurice E. JENKINS and Hazel Jenkins, and Phillip Jenkins, Defendants-Appellants,**

**and**

**Walter Andrews, B. W. Andrews, Walter DeWeese, Everett Welsh and Ralph Welsh, Substituted Defendants.**

**No. 55263.**

Supreme Court of Missouri, Division No. 1.

Dec. 14, 1970.

Motion to Modify Denied and Modified on Court's Own Motion Jan. 15, 1971.

James J. Wheeler, Keytesville, Christian F. Stipp, Stipp & Ferguson, Carrollton, for respondent.

Edwin Yagel, Brookfield, Robert Devoy and Richard N. Brown, Associate, Brookfield, for appellants.

LAURANCE M. HYDE, Special Commissioner.

Action to adjudge title in plaintiff (purchaser at an execution sale on a judgment against Maurice E. Jenkins only) of 400 acres of land in Linn County by setting aside two deeds alleged to have been made by defendant Maurice E. Jenkins and wife with intent to hinder, delay and defraud creditors, with a second ejectment count for possession. Defendants' answer, first a general denial, but permitted to be amended at the close of the evidence, alleged title in Phillip Jenkins and Hazel Jenkins after conveyance from Maurice E. Jenkins and wife as tenants by the entirety. Defendants sought to have a determination of title in accordance with their deeds. The court found for plaintiff setting aside the two deeds, quieting title in plaintiff subject to the lien of a deed of trust to Phoenix Mutual Life Insurance Co. securing a note for $65,000, and for possession of the land with judgment for $27,500 for withholding possession on the basis of $25 per acre per year rental value. Defendants Jenkins have appealed.

In 1947, the land involved was conveyed to "Thomas L. Jenkins and Cordia M. Jenkins, husband and wife, for life, with remainder in fee simple to Maurice E. Jenkins," their son. Thomas L. Jenkins and Cordia M. Jenkins died in July 1954. In January 1962, the Chariton County Grain Co., Inc. sued Maurice E. Jenkins and wife Hazel Jenkins for $6,840.07 for feed and farm supplies. Evidence was heard by a referee, whose report filed October 26, 1964, found that the items of the account were charged to Maurice E. Jenkins only and that Hazel Jenkins had no interest in the livestock for which the feed was purchased. The referee recommended judgment for $6,840.07 with interest at 6% per annum from March 1, 1960. After a

hearing on exceptions to this report, judgment was entered against Maurice E. Jenkins only in accordance with this recommendation on December 18, 1965. Execution was issued on August 4, 1966 and levied against the land herein involved. Previously an attempt to levy on personal property had been unsuccessful because Hazel Jenkins, the wife of Maurice E. Jenkins, then claimed joint ownership in all the personal property.

Plaintiff, a member of the Board of the grain company, was the purchaser at the execution sale November 7, 1966 for a bid of $500. Defendants' attorney had announced at the sale that nothing was being sold because Maurice E. Jenkins had no interest to be sold and there were no other bids. This announcement was based on the claim of the validity of a deed later set aside by the court herein. On July 14, 1965, this deed was executed by Maurice E. Jenkins and Hazel Jenkins to create an estate in entirety in Maurice E. Jenkins and Hazel Jenkins, husband and wife. This deed recited: "This deed given to replace a lost deed heretofore executed by the same parties on the 17th day of July 1954." On January 11, 1967 a deed was executed by Maurice E. Jenkins and Hazel Jenkins to Phillip Jenkins and Hazel Jenkins. This deed was also set aside in the judgment in this case. Phillip Jenkins, son of Maurice and Hazel, an engineer employed in St. Joseph, claimed to have worked on the farm during the years 1964–1968, mainly weekends and vacation periods. He testified he purchased a tractor for use on farm in February, 1966 and also seed and fertilizer, farming 38 acres of it that year. He said he farmed 58 acres of it in 1967 and purchased that year, for general use on the farm, a corn planter and a rotary hoe.

In the proceedings before the referee the testimony of Mr. and Mrs. Jenkins was that the livestock on the farm and the machinery belonged to him alone except for a few hogs given to Mrs. Jenkins "three or four at a time," about 15 through the year. However, after execution was issued on the grain company's judgment Mrs. Jenkins claimed all the livestock and machinery were owned by them jointly by the entirety. As to the deed of July 14, 1965 reciting it was given to replace a lost deed, the Jenkins' evidence was that it was prepared by their attorney Errol Joyce, now deceased; that Mr. Joyce had prepared the deed referred to as lost in July 1954; and that it had been signed by them and left with him to be recorded. Their evidence was that they first discovered there was no such deed on record when they were obtaining the loan from Phoenix in July 1965. However, they had obtained a loan from the Mutual Benefit Life Insurance Co. in 1954 and from Northwestern Mutual in 1961, as well as a second mortgage to Chillicothe State Bank before making the Phoenix loan. The Jenkinses never attempted to establish a lost deed under the procedure provided by § 527.190, RSMo V.A.M.S.

The court in its decree in this case found as follows: "The Court finds and holds after mature consideration, that defendants Maurice E. and Hazel Jenkins, defendants, did not, in fact execute deed, as alleged, on the 17th day of July, 1954, transferring title from Maurice E. Jenkins individually with inchoate right to dower in Hazel Jenkins, to tenancy by the entirety; that deed of Maurice E. Jenkins and Hazel Jenkins, defendants, termed a replacement deed dated July 14, 1965, executed to replace deed allegedly made July 17, 1954, but never recorded, was drawn and executed with the intent to hinder and delay judgment creditor, Chariton County Grain Co., a corporation, in collection of account due that company by Maurice E. Jenkins and was executed in fraud of that creditor; that the deed of Maurice E. and Hazel Jenkins, defendants, to Phillip Jenkins and Hazel Jenkins, dated January 11, 1967, was likewise drawn, executed and recorded with

intent to hinder and delay said Chariton County Grain Company, was executed with fraudulent intent of both grantors and grantees; It is ordered and adjudged that these two deeds be and are set aside and for naught held; That plaintiff is the sole owner of the lands described in Amended Petition, * * * "

■ Defendants Jenkins (hereinafter called appellants) claim plaintiff's unqualified introduction in evidence of defendants' deed of July 14, 1965 and the referee's report, stating "the title to the land of the defendants was held by them as tenants by the entirety at the time this account was made," were conclusive admissions that Mr. and Mrs. Jenkins held title to the land involved by the entirety from July 17, 1954.

However, plaintiff's petition alleged that on the date the deed was executed "Maurice E. Jenkins was the sole owner" and indebted to the grain company; that there was no consideration for the deed he made that it "was made for the sole purpose of hindering, delaying and defrauding" his creditors; and that it "is fraudulent and void." The petition prayed the court to decree that deed and the later one made to Phillip Jenkins and Hazel Jenkins fraudulent and void. Thus the whole basis of plaintiff's title claim was that these deeds were void. At the trial, plaintiff first offered in evidence the sheriff's deed to him and his check to the sheriff for the amount of his bid. These were received without objection. Thereafter, the deed to the parents of Maurice E. Jenkins for life with remainder to him was received in evidence, then the petition in the grain company's suit on the feed account, the report of the referee, the deed of trust to Phoenix, the Jenkins deed of July 14, 1965 sought to be set aside, the grain company's judgment and execution thereon and other exhibits including a bank financing statement of July 13, 1965 signed only by Maurice Jenkins.

■ Travelers' Ins. Co. v. Beagles, 333 Mo. 568, 62 S.W.2d 800, 801 (cited by appellants) states: "Unless there is proof to the contrary, the recitals in a deed must be taken as true." In that case, this rule was applied to the recital in the deed as to consideration where there was no proof to the contrary. Moreover, in that case, the party who questioned the recital of consideration in the deed was the grantee in the deed and claimed title under it. Appellants also cite Mitchell v. McClelland, Mo.App., 306 S.W.2d 75, 80; Citizens Discount and Investment Corp. v. Wood, Mo.App., 435 S.W. 2d 717, 721 and Denton Const. Co. v. Missouri State Highway Comm'n, Mo., 454 S.W.2d 44, 48, but they do not support appellants' contentions. Mitchell held there was no evidence that deeds involved therein had not been executed long before the lien claimed therein had commenced. Citizens Discount denied replevin of an automobile by a finance company where a dealer expressly had been given the right to sell for cash. Denton Construction Co., involving construction of a contract to pave a state highway, held a contractor was entitled to extra compensation for repairing erosion damage to work done by another. As stated in 29 Am.Jur.2d Evidence § 840, p. 932: "It is well settled, however, that a party who introduces a document in evidence is not precluded from impeaching it by evidence which goes to its invalidity or which tends to show that it has not in law the effect that it purports to have." As stated in McDowell v. Staley, 231 N.C. 65, 55 S.E.2d 798, 799: "The rule is that a party who introduces a deed admits its execution but not necessarily the truth of its recitals or its legal effect, and may show by further evidence the truth of the matter and the relation of the deed to the entire transaction." See also State v. Payne, Mo., 342 S.W.2d 950, 954, and cases cited; Graton v. Holliday-Klotz Land & Lumber Co., 189 Mo. 322, 87 S.W. 37; Stewart v. Omaha Loan & Trust Co., 283 Mo. 364, 222 S.W. 808, 812.

Appellants cite 32A C.J.S. Evidence § 1040(4), p. 792, but it says, as to impeaching or contradicting documentary evidence introduced by a party to support his contention, "the rule does not apply where a document is introduced for the purpose of impeaching it on the ground of fraud." Ellis v. Farmer, Mo., 287 S.W.2d 840, 844 (also cited by appellants) is cited as authority for this statement. The Ellis case involved transactions between a cotton gin owner and a farmer for money furnished to the farmer and crops sold to the gin owner. The gin owner's books were offered in evidence by the farmer and it was contended he was bound by all the entries but we said "respondent is not conclusively bound by said statements where other evidence was introduced contradicting the statements." In Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9, 11, we noted "that transactions between husband and wife to the prejudice of the husband's creditors are looked upon with suspicion, 'and their good faith must be so clearly shown that there can be no reasonable doubt of the honesty of the transactions.'" See also 37 C.J.S. Fraudulent Conveyances § 252, p. 1085. There is no evidence in this case that Mrs. Jenkins was a bona fide creditor of her husband when the deed of July 14, 1965 was made or on the date when it was claimed the alleged lost deed was made. See also 37 C.J.S. Fraudulent Conveyances § 252, p. 1085. Although the referee's findings in the action on the grain company's account did state "that the title to the land of the defendants was held by them as tenants by the entirety at the time this account was made" the title to this land was in no way involved in that case; and the referee's statement was based only on oral testimony. It also appears that appellants had other land which was never owned by Maurice E. Jenkins individually. Therefore, this statement in his findings must be disregarded as not being a determination of that issue and not binding on anyone as to the land herein involved.

■ Our determination of these issues also shows that appellants' claim of error in overruling their motion for a directed verdict at the close of plaintiffs' evidence is without merit. Incidentally, it is well to note that "a motion for a directed verdict like our old demurrer to the evidence, has no place in an equity case." Moser v. Williams, Mo.App., 443 S.W.2d 212, 215, and cases cited. As stated therein "Civil Rule 67.02, authorized motions to dismiss at the conclusion of a plaintiff's evidence in a nonjury case." There is no verdict in a nonjury case.

■ Appellants claim error in sustaining an objection to testimony of witness Kenneth Dail, who was the grantor in the 1947 deed to Maurice E. Jenkins' parents with remainder to Maurice. Dail was an abstracter and Maurice said he went to see him in July 1954 after his parents died. Apparently appellants wanted to show that Maurice talked to Dail about creating a tenancy by the entirety. On objection, the court ruled he could show what was done but not what was said. Dail testified: "Q. Was there anything done by you at that time? A. No." There was no offer of proof so there is nothing preserved for review.

Appellants also claim error in sustaining an objection to the following question after it was answered by Maurice Jenkins: "Q. (Mr. Yagel) Directing your attention to the 17th day of July, 1954, did you make any attempt to place title to this land in you and your wife as tenants by the entirety? A. Yes."

■ However the court later heard testimony of Mr. Yagel who said he was in the office of attorney Errol Joyce, in July 1954, when such a deed was made, signed by Maurice E. Jenkins and Hazel Jenkins and left with Mr. Joyce. Since Maurice Jenkins answered the above question "Yes," we have both his testimony and Mr. Yagel's about making a deed. We also

consider the testimony heard by the referee. Our review of cases tried by the court without a jury provided by Civil Rule 73.01(d), V.A.M.R. is: "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature." Furthermore "The judgment shall not be set aside unless clearly erroneous" with due regard "given to the opportunity of the trial court to judge of the credibility of the witnesses." Moreover, Rule 73.01(d) provides: "The appellate court shall consider any evidence which was rejected by the trial court * * when the appellate court believes such evidence to be admissible." In equity cases, the appellate court has always considered excluded admissible evidence, St. Louis Southwestern Ry. Co. v. Meyer, 364 Mo. 1057, 272 S.W.2d 249, 254. We, therefore consider the above-quoted testimony of Maurice Jenkins as meaning he executed an entirety deed on that date. Nevertheless, on the whole record and all the facts and circumstances shown in evidence we do not consider the finding of the trial court on this issue to be clearly erroneous, but instead find it fully supported, and accept it as a proper basis for the result reached herein.

After the appeal in this case, associates of plaintiff in the grain company purchased the $65,000 Phoenix note, which was secured by a trust deed on the 400-acre farm in Linn County, the land sold to plaintiff at the execution sale on the grain company's judgment. This note was also secured by a deed of trust on other land which appellants owned in Chariton County. Appellants filed a motion herein for substitution of these new owners of the $65,000 note as defendants in this case in place and stead of Phoenix. This motion for substitution was sustained. Appellants ask no relief in this case against the substituted defendants but exhibits attached show that appellants have filed a petition for declaratory judgment in the Circuit Court of Linn County against plaintiff and the substituted defendants herein to prevent foreclosure or in the event of foreclosure to require the sale of the Linn County land to exonerate the Chariton County land. Those issues are not involved in this case and there is no question as to the validity of the $65,000 mortgage on the land herein involved.

Appellants say plaintiff should have sued to set aside the deed of July 14, 1965, and had the issue of its validity determined before sale under execution. The rule is thus stated in 37 Am.Jur.2d Fraudulent Conveyances § 161, p. 830: "In most jurisdictions a judgment creditor may disregard a fraudulent conveyance, levy upon the property conveyed, whether personal or real, as though the conveyance did not exist, and cause it to be sold under execution without bringing direct suit to set aside the conveyance, leaving the issue of fraudulent transfer for later determination. This is the rule under the Uniform Fraudulent Conveyance Act." (Uniform Fraudulent Conveyance Act § 9.) See also similar statement of this rule in 37 C.J.S. Fraudulent Conveyances § 308, p. 1139.

We have made it possible for a creditor to join in a single action a claim for money and a claim to have set aside a conveyance fraudulent as to him, Rule 55.08; and this is the better practice. However, at the time the action on the account herein involved was commenced the record title was in defendant Maurice Jenkins and the conveyance to create an estate by the entirety was not executed and recorded until after the report of the referee was made, finding defendant owed the account to the grain company. Moreover, it does not appear when the grain company's officers learned of the deed of July 14, 1965 and probably it appeared that defendant Maurice Jenkins had sufficient personal property to pay the debt until after judgment it was claimed that ownership of this personal property was no longer his.

The definitely settled rule in this state is that a judgment creditor "may in-

stitute his suit to set aside the fraudulent deed and subject the land to the payment of the debt by thus first ascertaining the interest of the debtor therein, or he may sell the land under execution before the ascertainment of the debtor's interest, and then set aside the fraudulent deed. The purchaser at the execution sale will occupy the same position as if he were the creditor." Lionberger v. Baker, 88 Mo. 447, 455, where the court also said: "It is to be regretted that the former course is not more frequently pursued, and thereby avoid the sacrifice of property and speculation attending such execution sales, of which this case is no exception; but the right of the creditor to pursue either course is well established in this state." The court cited Bobb v. Woodward, 50 Mo. 95, 102, which stated reasons for a creditor first ascertaining the interest of the debtor but saying: "Yet, as the law exists the creditor may at once proceed to sell the debtor's interest, leaving it to the purchaser to ascertain as he may what that interest is; or he may first, by a proceeding in equity, ascertain the existence or extent of the interest, and sell it when so ascertained. That the latter is the better course is no reason, however, why the former may not be pursued."

In Slattery v. Jones, 96 Mo. 216, 8 S.W. 554, it was held that a judgment against a debtor is a lien upon real estate in the hands of his fraudulent grantee and may be enforced against it by execution. In that case, the court pointed out that our statute, now § 428.020, RSMo, V.A.M.S., declares that every conveyance of land with intent to defraud creditors, etc. "shall be from henceforth deemed and taken, as against said creditors and purchasers * * to be clearly and utterly void." This ruling as to a lien is restated in Dalton v. Barron, 293 Mo. 36, 239 S.W. 97, 22 A.L.R. 187. See also Garrett v. Wagner, 125 Mo. 450, 463, 28 S.W. 762; 37 Am.Jur.2d Fraudulent Conveyances § 181, p. 845. Garrett overruled Woodard v. Mastin, 106 Mo. 324, 17 S.W. 308, which undertook to change the rule from acquisition of title at an execution sale to a lien for the amount due. The previous cases were considered by the court en banc in Oldham v. Wade, 273 Mo. 231, 200 S.W. 1053, where it was said that property worth $5,000 was sold and bought in for $100, on execution without attempting to set aside the conveyance as in this case. The court said (200 S.W., l. c. 1057): "We have found that defendants fraudulently attempted to place their property beyond the reach of their creditors. We learn from the record that their counsel at the sale under execution announced to those present that H. E. Wade owned the property in controversy, and that whoever purchased the same would buy it subject to his claim. * * * They have been endeavoring to defeat plaintiffs in the collection of their judgment ever since its rendition. They are in no position, after the fraud attempted to be perpetrated on plaintiffs, and after announcing at the sale that the purchaser would acquire no title, to urge at our hands that the sale should be set aside for inadequacy of consideration."

Appellants cite Schaeffer v. Moore, Mo., 262 S.W.2d 854, where a sheriff's sale under execution set aside because the bid accepted at the sale "was so grossly inadequate as to shock the conscience." However, that was not a fraudulent conveyance case and no one representing the landowner urged anyone not to bid. We consider a conveyance, afterwards determined to be fraudulent, creates a different situation and believe the element of fraud in a transaction and the effect of § 428.020 is the reason for the rule that a creditor has a lien and may disregard the fraudulent conveyance, levy on and sell the property as though the conveyance did not exist, although such a sale will usually bring less than the value of the land. As said in Rankin v. Harper, 23 Mo. 579, 586: "It ill-becomes the parties to the fraud, after they have been detected and foiled in their attempt, to complain of the sacrifice of property incident to such sales. These sacri-

fices are perhaps fully compensated for by their practical teachings, that, after all, 'honesty is the best policy.'" See also statement of Judge Sherwood (Garrett v. Wagner, supra, 125 Mo., l. c. 463, 28 S.W. 762) in overruling Woodard v. Mastin, supra. Of course to confirm title under such an execution sale, the purchaser must thereafter obtain a judicial determination that the conveyance was fraudulent. While we agree with the previously stated view that it is better to determine the fraudulent character of a conveyance before an execution sale, and now to use the procedure provided by Rule 55.08, we must consider, as did the trial court, that the time element of the transactions and litigation herein is an important factor in determining priority of remedies. Therefore we agree with the ruling in Oldham v. Wade, supra, 273 Mo. 231, 200 S.W., l. c. 1058, that under the similar situation herein shown, appellants are not in a position to urge that the sale should be set aside for inadequacy of consideration. We further note that the only specific relief sought by appellants amended answer was to declare title in them.

The trial court in its opinion overruling appellants' motion for rehearing said: "[D]efendants point out the inequity brought about in that the price paid by plaintiff for this land, valued at in excess of $75,000.00, was only $525.00. The Court must consider that the land is subject to note secured by deed of trust of sizeable amount ($65,000.00); that bidders at sale were informed that defendants claimed no right of creditor to cause the lands to be sold, this possibly 'chilling' the sale. The Court feels that defendants are asking the Court to relieve them of the results of their own folly."

Thus it appears the situation here is substantially the same as that ruled by this court en banc in Oldham v. Wade, supra, and we hold this case is ruled by that decision.

Appellants point out that plaintiff prayed "judgment for the recovery of said premises, and $1,000.00 damages for unlawfully withholding the same from Plaintiff, and $500.00 for monthly rents and profits from the rendition of the judgment until possession of the premises is delivered to the Plaintiff." This would be $6,000 per year, but the judgment was for $10,000 per year based on testimony of the reasonable rental value being $25 per acre. Objection was made to this testimony as to this rental value and was overruled.

Our statute, § 524.110, RSMo, V.A.M.S., which goes back more than 100 years, see R.S.1835, § 11, p. 235, and is now Civil Rule 89.09, authorizes a successful plaintiff in ejectment to recover rents and profits "from the time of the commencement of the action * * * [w]hen it shall not be shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action." However, when it is shown that defendant did have knowledge of plaintiff's claim preceding the commencement of the action, "recovery shall be from the time that such knowledge came to the defendant" within five years preceding the commencement of the action. Of course in this case, defendant had knowledge of plaintiff's claim from the time of the execution sale January 5, 1967 and plaintiff was entitled to recover rents and profits from that date. Nevertheless, the amount of damages awarded cannot exceed the claim of the petition. Smith v. Royse, 165 Mo. 654, 65 S. W. 994; see also Fletcher v. North British and Mercantile Ins. Co., Mo.Sup., 425 S.W. 2d 159, 164; Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 29; Sipes v. Vaca, Mo.Sup., 397 S.W.2d 658, 666. Plaintiff, in his petition, has only asked for $1,000 damages for defendants "unlawfully withholding same from plaintiff" and then for "$500.00 for monthly rents and profits *from the rendition of the judgment until possession of the premises is delivered to the plaintiff.*" (Emphasis ours.) Thus it definitely appears that the claim of plaintiff's

petition is for only $1,000 damages for withholding possession from him prior to the time of judgment. Therefore, the judgment for $27,500, for withholding possession from January 5, 1967 to date of judgment, cannot stand and must be reduced to $1,000, the amount sued for by plaintiff for that period.

It is also provided, § 524.140, RSMo, now Civil Rule 89.12: "[J]udgment shall be for the recovery of the premises, the damages assessed and the accruing rents and profits * * * from the time of rendering the verdict until the possession of the premises is delivered to the plaintiff." Plaintiff's petition did ask for "$500.00 for monthly rents and profits from the rendition of the judgment until possession of the premises is delivered to plaintiff" and the judgment should have so ordered. Plaintiff says no claim about the amount of the judgment was made in appellants' motion for new trial. However, the issue on appeal in a court-tried case is the propriety of the court's decision on the whole record, the case being determined de novo on appeal on the facts, with the appellate court having full authority to make its own findings of fact and order proper relief. March v. Gerstenschlager, Mo.Sup., 436 S.W.2d 6; Russell v. Russell, Mo.Sup., 427 S.W.2d 471; City of Mt. Vernon v. Garinger, Mo.Sup., 395 S.W.2d 214.

The judgment is therefore modified by reducing the amount awarded plaintiff against Maurice E. Jenkins from $27,500 to $1,000 for withholding possession prior to rendition of judgment, and for $500 per month from the rendition of judgment until delivery of possession of the premises to plaintiff. As so modified the judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.